**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Glenn D. HAVENS, Defendant and Appellant.**

**No. 12072.**

Supreme Court of South Dakota.

Argued Dec. 1, 1977.

Decided April 12, 1978.

Rehearing Denied May 17, 1978.

John P. Guhin, Asst. Atty. Gen., for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

T. F. Martin of McCann, Martin & Mickelson, P. C., Brookings, for defendant and appellant.

MORGAN, Justice.

The appellant was tried on four charges: Two of rape of one prosecutrix; one of attempted rape and one of assault with intent to commit rape on another prosecutrix. This is an appeal from the jury verdict and the judgment convicting the appellant of one count of rape and one count of assault and battery upon the person of another. We affirm.

The evidence discloses that the appellant, after consuming alcoholic beverages for a period from 5 p. m. until 2 a. m., entered into the dormitory of the Watertown Business College in the early morning hours. He entered one room and accosted the young woman occupant but released her when she indicated she was going to become very sick and wanted to go to the bathroom. He then proceeded to a second room where he removed his pants, awak-

ened the young woman occupant, and when asked what he wanted advised her to "keep quiet, do what I tell you and you won't get hurt." During the course of the next half hour he subjected her to three acts, each of which would constitute rape as defined by statute. When she began crying rather loudly he continued to warn her to be quiet and she wouldn't get hurt. The defense was primarily that he was intoxicated and on such occasions he blacks out and doesn't know what he is doing. He also attempted to show and argue that the second girl did not resist his acts and thereby consented, negating rape.

Appellant attacks the constitutionality of SDCL 22–22–1(1) on the grounds that it is vague and indefinite in that the definition of rape doesn't include the element of lack of consent. To answer this issue and some others raised by the appellant, we must first examine the new rape statute with respect to the sections dealing with forcible rape.

SDCL 22–22–1, as enacted by Chapter 169, § 1, Laws of 1975, provides in pertinent part:

> Rape is an act of sexual penetration accomplished
>
> (1) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution;

Under the prior statute, the sections dealing with forcible rape likewise did not include consent or lack thereof as an element in the definition. However the element of resistance was included. It was under that statute that this court in *State v. Thompson*, 71 S.D. 319, 334, 24 N.W.2d 10, 18 (1946) said:

> It is true that the lack of consent is the gravamen of rape, but in so far as rape in the first degree is concerned, as applied to this case, the lack of consent must be established by the resistance of the female.

In that same decision this court went on to quote with approval the text from 52 C.J. § 1019 as follows:

> The female need not resist as long as either strength endures or consciousness continues. Rather the resistance must be proportioned to the outrage; and the amount of resistance required necessarily depends on the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested. * * * Stated in another way, the resistance of the female to support a charge of rape need only be such as to make nonconsent and actual resistance reasonably manifest. * * * Further, the resistance must be in good faith and not a mere pretense. * * *

In this respect the *Thompson* court equated resistance with lack of consent, requiring only that it be manifest and in good faith.

The state of the rape laws at that time reflected the difficult task of the criminal law to define the crime of forcible rape in a manner so as to protect women from degrading sexual assault without convicting innocent men. The case law which developed evinced a disproportionate concern for the latter aspect. The attitude of this court was reflected in the case of *State v. Dachtler*, 43 S.D. 407, 410, 179 N.W. 653 (1920) wherein the author cited the oft-quoted statement of Sir Mathew Hale: "It must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." (I. M. Hale, The History of the Crown 635 (1680). The crime was defined primarily in terms of the conduct of the victim. The actor's conduct became criminal only if the victim's conduct met the defined requirements. In an age when a woman's status in society depended on her premarital virginity and post-marital fidelity, one could arguably expect a woman to feel that she must defend herself "to the utmost" to avoid being publicly ostracized, yet as has been recognized with respect to other crimes of violence, resistance may often provoke greater injury so that it is probably inadvisable as soon as the use of force or coercion becomes apparent.

The drafters of the Model Penal Code in defining the amount of coercion necessary for forcible rape selected an innovative standard: "If: [the actor] compels the [victim] to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping to be inflicted upon anyone; * * *." The victim's conduct is examined solely as a response to that of the actor, yet the comment notes that the text requirement that the victim be "compelled to submit" satisfies the requirement that initial resistance more than token is required.[1] However, the comment goes on to state that liability is imposed where the victim submits out of "fear" of violence without requiring that the fear be reasonably grounded, pointing out that one who takes advantage of a victim's unreasonable fear of violence should not escape punishment any more than a swindler who cheats gullible people by false statements which they should have found incredible.[2] The Model Penal Code also extends the range of threats to include a threat of harm to a member of the victim's family.

■ We hold that the 1975 enactment of the South Dakota Legislature repealing and reenacting SDCL 22–22–1 was intended to modernize the rape statute to place the act in a proper perspective and to try the actor for the crime, not the victim. Although the legislature eliminated the word "compels" as found in the Model Penal Code, we feel that the terminology "accomplished * * through the use of force, coercion or threats * * *" is sufficient to demonstrate compulsion. Such implied element of compulsion still gives rise to the necessity for resistance more than token unless before or when offered the victim is subjected to fear of violence.[3] We still concur in the statement of the *Thompson* court that consent is the gravamen of rape for surely sexual intercourse between two consenting persons, both capable physically, mentally and maturely of giving consent, cannot give any basis for a rape charge.

■ With respect to the constitutionality of the statute, we again apply the standard as set forth in *State v. Bad Heart Bull*, S.D., 257 N.W.2d 715, 720 (1977):

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process (citation omitted). A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden (citation omitted).

■ Applying this test it would seem that a person of ordinary intelligence would be given fair notice that his contemplated conduct of threatening a girl and then physically forcing her to have sexual intercourse is forbidden by the statute. There is testimony that the appellant told the girl upon waking her up "be quiet and do as I say and you won't get hurt" and then pushed her onto her bed. This type of conduct would fall under the statute language "threats of immediate and great bodily harm against the victim." Under our standard of review of constitutionality of a statute, excepting only First Amendment cases, we are not required to examine the statute with respect to every possible application, but rather only as to the application in the case at hand.[4] We hold that the evidence in this case, viewed in the light most favorable to the verdict, shows sufficient force, coercion and threats of harm to the person of the prosecutrix that she had ample reason to fear violence if she resisted the attack.

1. Model Penal Code 4th Draft § 207.4(6) at 246.

2. Id. at 247.

3. The 1975 enactment also extended the range of threats to any person within the victim's presence, excluded evidence of the victim's pri-

or sexual conduct with persons other than the accused unless relevant to a fact at issue and diminished the punishment for conviction.

4. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).

We next consider the appellant's assignment of error that the trial judge erred in refusing to give his requested instructions relative to consent and resistance and foreclosed appellant from arguing consent as a defense. In its instruction the trial court instructed the jury that rape is defined by our law as follows:

Rape is an act of sexual penetration accomplished with any person under the following circumstances: through the use of force, coercion or threats of immediate and great bodily harm against the victim, accompanied by apparent power of execution. Sexual penetration means an act, however slight, of sexual intercourse.

The trial court went on to instruct that the essential elements, each of which the state must prove beyond a reasonable doubt, are:

(1) That the defendant at the time and place as alleged in the information accomplished an act of sexual penetration.

(2) That the act of sexual penetration was accomplished through the use of force, coercion or threats of immediate and great bodily harm against [the prosecutrix], accompanied by apparent power of execution.

The appellant's first proposed instruction was based on *State v. Thompson*, supra, and would have instructed the jury that:

It is necessary that you find that [appellant] acted against the consent of [the prosecutrix]. Lack of consent must be established by the resistance of [the prosecutrix]. Simply saying that she did not consent is not enough. The amount of resistance necessary to establish that she did not consent is such as to make nonconsent and actual resistance reasonably manifest. Further, the resistance must be in good faith and not a mere pretense. The amount of resistance must be proportioned to the outrage and depends on the circumstances, such as the relative strength of the parties, the age and condition of the female, the uselessness of resistance, and the degree of force manifested.

The second proposed instruction solely on consent stated:

Consent is a quality or condition of the mind. It can seldom be proved and usually is not proved by direct evidence such as a statement of purpose or declaration of intent by the person charged.

It must be determined from all the evidence, facts and circumstances in the case and the acts and conduct of the [prosecutrix], as shown, applying to said evidence, facts, acts and conduct, your judgment and experience as men and women.

Every sane person is presumed to intend the natural, probable, and usual consequences of his own acts, unless it appears from the evidence that some other evidence or unexpected consequence was in the mind of the actor at the time.

▆▆▆ As we have previously pointed out the statutory scheme under the 1975 amendment is to try the accused not the prosecutrix. The trial court's instructions correctly set out the law under the evidence adduced at the trial. The appellant's first proposed instruction that "lack of consent must be established by resistance" is simply no longer correct law. That is not to say that consent cannot be a defense where there is evidence offered and received that the victim did indeed consent, but that would also have to utterly negate any element of force, coercion or threat. In the instant case the closest thing to evidence of consent was appellant's testimony of an alcoholic befuddled recollection of being solicited to enter the building by an unidentified woman clad only in undergarments who immediately engaged in an act of fellatio while appellant remained clad in all but his jacket. When that act was completed she shoved him out the door. Appellant did not testify that she consented to any acts of vaginal intercourse nor did he identify either of the prosecutrixes as the woman. We hold therefore that there was no error on the part of the trial court in failing to give any instruction on consent because the appellant's first proposed instruction would not have been proper in any event, and the

appellant's evidence was so vague that it would not support the second instruction.[5]

As we view the appellant's arguments and the record, the closest thing to prejudicial error was the conduct of the assistant state's attorney in his opening statement when he waxed eloquent about the following:

> [T]he time honored American tradition which has been held that virtue and chastity of American women is something to be placed in a high position in society and in a position of admiration and respect. * * * This is something that is basic in American tradition.

He went on after the court admonished him against arguing and directed him to just present what he was going to show to the jury and stated:

> The history shows that when the virtue and chastity of a young American woman is violated it becomes extremely difficult for that young American woman to reveal and expose the horrendous details that may have taken place * * *.

First of all the statements objected to, as the trial court properly held, were argument not simply a statement of the evidence the state expected to adduce, and their purpose could only be to arouse prejudice in the minds of the jury. Had counsel taken the advice of the court in its ruling on the first objection we could have laid his declamation to mere inexperience and perhaps over enthusiasm, but he persisted to a point where defense counsel had to move for a mistrial. At this point we feel that the question was very much in doubt, however the learned trial judge noted that he did not feel that the remarks were prejudicial and denied the motion. The trial judge was on the scene, had heard the arguments and had the opportunity to note whether they had any apparent effect on the jury. He apparently didn't feel that they had and we accede to his judgment lacking any showing on the part of the defense of actual bias or prejudice.

We must however remind prosecutors that it is the foundation of the criminal justice system to see that the defendant and every defendant gets his day in court and a fair trial. This burden weighs as heavily on prosecutors as it does on judge, jury and defense counsel.[6]

The perorations above were made by the prosecutor with full knowledge that at a pretrial hearing pursuant to SDCL 23–44–16.1[7] the trial court had precluded the defendant from seeking to prove unchastity of either prosecutrix as a defense. Consequently, the prosecutor knew that the appellant would be unable to refute his argument. This conduct is simply and basically unfair tactics on the part of the prosecutor and of itself constitutes error. We hold, however, that in the light of the evidence adduced in support of the prosecution that such error does not rise to the degree to require a reversal.

We have reviewed the other allegations of error and find nothing prejudicial.

All the Justices concur.

---

5. *Miller v. Baken Park, Inc.*, 84 S.D. 624, 175 N.W.2d 605 (1970); *State Highway Commission v. Lacey*, 79 S.D. 451, 113 N.W.2d 50 (1962).

6. *State v. Sahlie*, S.D., 245 N.W.2d 476 (1976); *People v. Farrar*, 36 Mich.App. 294, 193 N.W.2d 363 (1971).

7. SDCL 23–44–16.1 provides:

> In prosecutions for rape, evidence of specific instances of the victim's prior sexual conduct shall not be admitted nor reference made thereto before the jury or jury panel, except as provided herein. Whenever any party proposes to offer evidence concerning the victim's prior sexual conduct, the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence. Evidence of the victim's sexual conduct with persons other than the accused is not admissible unless relevant to a fact at issue.