PEOPLE v HUDGINS

Docket No. 63816. Submitted January 20, 1983, at Detroit.—Decided April 20, 1983.

Charles V. Hudgins was convicted of possession of heroin, Detroit Recorder's Court, Warfield Moore, Jr., J. The defendant appealed alleging that (1) the trial court erred in allowing the prosecutor to introduce evidence of a defense witness's conviction for use of heroin, (2) certain remarks made by the prosecuting attorney during his closing argument denied him a fair trial, and (3) certain remarks made by the trial judge during jury voir dire and examination of a defense witness denied him a fair trial. *Held:*

1. The trial court erred in admitting evidence of the defense witness's prior conviction for use of heroin to attack the witness's credibility. The error was not harmless because the credibility of the witness was critical to the outcome of the case. Thus, even though the defendant neither moved to suppress the evidence nor objected to the evidence at the trial court level, the defendant's conviction should be reversed on the basis of the error.

2. The defendant's conviction should be reversed on the basis of the prosecutor's remarks during his closing argument regarding the prevalence of drug trafficking in the area in which the police observed the defendant. The prosecutor improperly appealed to the prejudices of the jury and the tendency to find guilt by association.

3. The trial judge's comments during voir dire which did not

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[2] 29 Am Jur 2d, Evidence § 327.
    Use of drugs as affecting competency or credibility of witness. 65 ALR3d 705.
[3, 6] 5 Am Jur 2d, Appeal and Error §§ 778, 783-792, 798.
[4] 5 Am Jur 2d, Appeal and Error §§ 624-627.
[5]·63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial §§ 280-314.
[6] 75 Am Jur 2d, Trial §§ 87, 119.
[7] 58 Am Jur 2d, New Trial § 52.
[8] 58 Am Jur 2d, New Trial §§ 52, 54.

pertain to the defendant personally were not improper. The trial judge's comment during the cross-examination of a defense witness was improper and unwarranted. The remark weakened the credibility of the witness and is cause for reversal of the defendant's conviction.

Reversed and remanded.

1. EVIDENCE — APPEAL — PRESERVING QUESTION.

Specific objections to the admission of evidence will not be considered by the Court of Appeals where there has been no objection raised at the trial, absent a showing of manifest injustice.

2. EVIDENCE — IMPEACHMENT — USE OF HEROIN — RULES OF EVIDENCE.

Evidence of a witness's misdemeanor conviction for use of heroin is inadmissible to impeach that witness because the crime is punishable by not more than one year of imprisonment and does not involve theft, dishonesty, or false statement (MRE 609).

3. CRIMINAL LAW — HARMLESS ERROR.

A trial court's error is not harmless where a defendant is convicted of a criminal offense and if, in the absence of the error, it is reasonably possible that one juror would have voted to acquit.

4. CRIMINAL LAW — ARGUMENT OF COUNSEL — PRESERVING QUESTION.

Appellate review of alleged improprieties in a prosecutor's closing argument is precluded in the absence of objection in the trial court unless failure to consider the issue would result in a miscarriage of justice.

5. CRIMINAL LAW — PROSECUTORIAL COMMENT.

A prosecutor must not appeal to the prejudices of the jury.

6. CRIMINAL LAW — APPEAL — JUDICIAL CONDUCT — FAIR TRIAL.

Reversal of a defendant's conviction is mandated where the trial judge's conduct prevented the defendant from obtaining a fair trial.

7. CRIMINAL LAW — NEW TRIAL — JUDICIAL CONDUCT.

A criminal defendant is not entitled to a new trial where the trial judge disparaged neither the defendant personally nor his defense but merely disapproved of the charged illegal act; if, however, a trial judge connects a defendant to the conduct of

which the trial judge has disapproved openly, the defendant is entitled to a new trial.

8. Trial — New Trial — Courts — Witnesses — Jury Trial — Judicial Questioning.

A new trial should be ordered where the judge's questions and comments may well have unjustifiably aroused suspicion in the mind of the jury as to a witness's credibility and where the judge's partiality quite possibly could have influenced the jury to the detriment of a defendant's case.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Jerome S. O'Connor,* Assistant Prosecuting Attorney, for the people.

*Greenspon, Scheff & Washington* (by *Eileen R. Scheff),* for defendant.

Before: T. M. Burns, P.J., and R. M. Maher and Hood, JJ.

Per Curiam. Defendant was convicted by a jury of possession of a controlled substance, MCL 333.7403; MSA 14.15(7403). Sentenced to from 30 months to four years imprisonment, defendant appeals by right.

The testimony received at trial painted two distinct and conflicting portraits of the events underlying the prosecution. According to the arresting officers, they first spotted the defendant standing by an occupied car stopped in the street. The occupants of the car appeared to point in the direction of the officers and then drove away, leaving defendant alone in the street. The defendant walked towards the officers and, as he did so, dropped a cigarette pack from his hand. One of the officers detained the defendant while the other

retrieved the pack. The pack enclosed several coin envelopes, at least one of which contained heroin. One of the officers also testified that the area in which these events occurred—near the Highland-Woodrow Wilson intersection in Detroit—is the scene of frequent narcotics deals.

A different scenario emerged from the testimony of defendant and his two witnesses, Joseph Ezidore and defendant's mother. On the day in question, defendant, accompanied by his mother and Ezidore, drove to a local store to pick up some items. Ezidore waited in the car while defendant and his mother went into the store. When defendant emerged from the store, one of the officers stopped him while the other searched the area until he found a cigarette pack about 20 or 30 feet away. Neither Ezidore nor defendant's mother observed defendant drop anything from his hand and defendant denied doing so. Moreover, defendant's mother, who had followed her son out of the store, testified that the cigarette pack was not located in the path defendant had taken from the store.

First, defendant maintains that the trial court erred in allowing the prosecutor to introduce evidence of Ezidore's conviction for use of heroin, MCL 333.7404; MSA 14.15(7404). Because the defendant neither moved to suppress nor objected to this evidence we can review the issue only if our failure to do so would result in a manifest injustice. See *People v Farnsley,* 94 Mich App 34, 36; 287 NW2d 361 (1979).

The following colloquy opened the prosecution's cross-examination of Ezidore:

"*Q.* Mr. Ezidore, you have never been convicted of a felony or misdemeanor in the last 10 years?

"*Defense Counsel:* Just a moment. Felony is the question.

"*The Court:* Felony. Have you been convicted of a felony?

"*The Witness:* No, I haven't.

"*Q. [By prosecutor]:* Have you ever been convicted of possession of heroin?

"*A.* Use.

"*Q.* Oh. You have been convicted of unlawful use of heroin?

"*A.* Yes, I have.

"*Q.* Okay. That's a misdemeanor; is that correct?

"*A.* Yes, it is.

"*Q.* So you have been—you have been convicted of a misdemeanor for unlawful use of heroin?

"*A.* Yes, I have.

"*Q.* And when was that?

"*A.* Over a year or so ago."

Thus, the prosecutor attempted to impeach Ezidore by eliciting from the witness his prior conviction for use of heroin. The admissibility of evidence of a prior conviction for the purpose of impeaching a witness is governed by MRE 609. That rule provides in pertinent part:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

"(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."

Under this rule, evidence of a conviction for use of

heroin is not admissible to impeach a witness. The crime is punishable by not more than one year of imprisonment. Nor does the offense involve "theft, dishonesty or false statement". Consequently, evidence of a conviction for use of heroin does not satisfy subsection (1) of MRE 609(a) and, accordingly, is inadmissible to impeach a witness.

The trial court erred in admitting evidence of Ezidore's prior conviction for use of heroin to attack the witness's credibility. Moreover, this error is not harmless. Error is not harmless if, in the absence of the error, it is reasonably possible that one juror would have voted to acquit. See *People v Oliver,* 111 Mich App 734, 757; 314 NW2d 740 (1981). This case presents a classic swearing contest between the police on one side and the defendant and his witnesses on the other. The credibility of the witnesses was critical to the outcome of the case. The improper attack on Ezidore's credibility was, therefore, especially damaging. In the wake of this attack, a juror inclined to believe defendant's version of events may very well have crossed over to the side of the prosecution.

Failure to reverse a defendant's conviction following a trial infected with such prejudicial error would be a manifest injustice. Consequently, we reverse defendant's conviction and remand for a new trial.

Defendant's trial presents yet another ground for reversal. Defendant maintains that remarks made by the prosecutor during his closing argument denied him a fair trial. Because the defendant did not object to these remarks, we cannot review unless our failure to do so would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 15-16; 260 NW2d 58 (1977).

During his closing argument, the prosecutor made repeated references to the prevalence of drug trafficking in the area in which the police observed the defendant. These remarks pervaded the prosecutor's argument, giving the jury the impression that—to use the words of the prosecutor: "Everybody is hawking narcotics on Woodrow Wilson and Highland." The import of this suggestion is obvious: the defendant, by virtue of his presence in this area of Detroit, is guilty of a narcotics offense.

A prosecutor must not appeal to the prejudices of the jury. *People v Cowell,* 44 Mich App 623, 628; 205 NW2d 600 (1973). By emphasizing that defendant was present in an area of considerable trafficking in drugs, the prosecutor appealed to that all-too-human tendency to find "guilt by association". This tactic denied defendant a fair trial, requiring reversal.

Finally, the defendant draws our attention to several comments made by the trial judge during jury voir dire and the examination of witness Ezidore. In her colloquy with the trial judge, juror Collins revealed that her father was a security officer in a local automobile plant. The exchange continued:

"*The Court:* So he is in police type of work?

"*Juror Collins:* Yea. He corresponds with the police.

"*The Court:* I see. Right. And I'm sure from time to time, he tells you some war stories; has he?

"*Juror Collins:* Right.

"*The Court:* Do you think that—has any of them dealt with drugs?

"*Juror Collins:* Yes.

"*The Court:* Drugs is a problem somewhat in the plants.

"*Juror Collins:* In the plant, yes.

"*The Court:* Everywhere else in society.

"Do you believe, ma'am, because of that, it's a possibility you might be biased or prejudiced against the defendant?

"*Juror Collins:* That and my own morals and principles against drugs.

"*The Court:* Well, we all—now, wait a minute. I want to see the hands of anybody who says let them use all the drugs they want. Let them toot up, shoot up and snoot it up. Anybody in the jury box?

"No. Seriously. Maybe somebody over there believes this ought to be a drug-open society where anybody who wants drugs ought to be able to get it. Especially heroin. Because it's so lovely and addicting. Anybody?"

In her colloquy with the trial judge, another juror stated that it would be difficult for her to sit on the jury on a particular day. On that day, she explained, the organization to .which she belonged was to hold "a bingo to raise funds for alcohol and drug abuse". After further questioning, the trial judge satisfied himself that the funds were for the treatment—not the advancement—of alcohol and drug abuse. The trial jduge then concluded:

"That's their treatment program. I wouldn't let you go and raise money for drug abuse. We have got enough of that without you raising money to go out there with drug abuse."

In general, "if the trial judge's conduct prevented the defendant from obtaining a fair trial, reversal is mandated". *People v Missouri,* 100 Mich App 310, 338-339; 299 NW2d 346 (1980). In *Missouri, supra,* a juror commented that he did not "like to be around people that use (narcotics)". The trial judge responded that that feeling "is perhaps a natural feeling", and then asked the juror if his attitude would affect his ability to be

impartial. This Court ruled that the judge's comment was not improper, explaining:

"His observation that it is a natural feeling not to like being around narcotics users was not disparaging to defendants personally, nor did it in any way reflect on their defense. Rather, in an attempt to elicit the juror's true feeling as to whether he could judge the case impartially, the judge acknowledged the normalcy of not wanting to associate with narcotics users. He never expressed his own opinion on the merits of the issue, nor did he persist in commenting about the matter." *Missouri, supra,* p 339.

This case is distinguishable from *Missouri, supra,* in one respect: the trial judge in the present case conveyed to the jury his disapproval of drug use. But the cases are also similar in one regard: in both cases the trial judge disparaged neither the defendant personally nor his defense. We find that the mere disapproval of the charged illegal act does not deny a defendant a fair trial. The trial judge said only that drug possession and use are undesirable. He did not suggest that the defendant participated in these activities. If, however, a trial judge connects a defendant to the conduct of which the trial judge has disapproved openly, the defendant is entitled to a new trial. A defendant cannot receive a fair trial when the trial judge has thus impugned his character. Consequently, we find that the trial judge's comments—which did not pertain to the defendant personally—were not improper.

We now turn to the trial judge's remarks made during the cross-examination of Ezidore. The prosecutor had asked Ezidore whether, before a "runner" believes he is to be questioned by the police, he throws to the ground coin envelopes containing

a "white powder". Defense counsel objected. After sustaining the objection, the trial judge continued:

"You can ask him about the police. Maybe there are some runners. Were there some runners out there on the date that your man was arrested?

*"The Witness:* Quite a few.

*"The Court: Quite a few? You knew them? Yea, you know them."* (Emphasis added.)

As this Court said in *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975):

"A new trial has been ordered where a judge's questions and comments 'may well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility (emphasis supplied), *Simpson v Burton,* * * * [328 Mich 557, 563-564; 44 NW2d 178 (1950)] * * *."

The trial judge's remark was improper and unwarranted. His comment tied the witness to the drug trade and, thus, weakened his credibility. As noted earlier, this case boiled down to a credibility battle between the witnesses for the people and the witnesses for the defendant. Consequently, we cannot view the trial judge's remark as harmless error. This error entitles defendant to reversal.

Reversed and remanded.