STATE of South Dakota, Plaintiff
and Appellee,

v.

Kenneth A. WILLIS, Defendant
and Appellant.

No. 14644.

Supreme Court of South Dakota.

Argued April 11, 1985.

Decided June 19, 1985.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Steve Miller, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

This is a criminal appeal from a judgment and sentence in Minnehaha County, entered on a jury verdict, which found Kenneth A. Willis guilty of two alternative counts of rape in the first degree. We affirm.

## FACTS

On December 22, 1983, Kenneth A. Willis, defendant-appellant herein, was indicted on four counts of first-degree rape.[1] Arraignment was held the next day and appellant pleaded not guilty. At this time, the State also filed a Habitual Offender Information Part II.

On June 5, 6, and 7, 1984, appellant's trial was conducted. We reconstruct the following factual scenario giving rise to this criminal case, as supported by the testimony.

Appellant Willis was a residential instructor at Sioux Vocational School for the Handicapped in Sioux Falls. His responsibilities in this position "were to assist the students, to enhance them to move out into the community and live on their own." S.R., the alleged victim, lived in the residential unit in which appellant worked. S.R. is 29 years old, mentally retarded, and a client at the school. C.F. is also a client at Sioux Vocational School, mentally retarded, and 19 years old.

In the early evening of November 18, 1983, appellant, S.R., and C.F. left the school in one of its vans and went to appellant's apartment to retrieve some board games. Along the way, C.F. got out of the van at a laundromat. Appellant and S.R. continued in the van to appellant's apartment and upon arrival, both entered. S.R. stood in the kitchen and appellant proceed-

---

1. The indictment specifically alleged that appellant's conduct on November 18 and 19, 1983, violated SDCL 22–22–1(1) and (2), which provide in relevant part:

   Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:

   (1) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
   (2) Where the victim is incapable, because of physical or mental incapacity, of giving consent to such act[.]

ed to the bedroom from which he asked S.R. if she wanted to have sex with him. S.R., scared and confused, either said "no" or failed to respond. In any event, the two picked up the games, got back into the school van, and headed back to the school. This much is undisputed.

At this point, the testimony becomes conflicting. S.R. testified that while on the way back, appellant unzipped her pants, uncrossed her legs, and put his hand down her pants. He continued to ask her to have sex with him and she told him to knock it off and tried to scare him away with a lit cigarette. Before reaching the school, appellant drove the van down a gravel road and parked it. Here, appellant and S.R. had sexual intercourse but S.R. said she tried to resist his advances, attempted to push him off, and screamed "rape."

Appellant, however, testified that during the drive back to the school, he again asked her to have sex and she responded "no." Appellant stated that before reaching the school, S.R. said she was ready to have sex with him and that at this point, he turned down the gravel road and parked. Appellant testified he then asked her if she was sure and S.R. responded "yes" and asked where they could do it. Both then removed their own pants and had intercourse on the back seat. He also testified that S.R. did not say no, did not yell or hit him. Appellant Willis also specifically denied the groping incident that S.R. stated occurred during the drive back.

After this, appellant and S.R. returned to the residential unit at the school. There, S.R. told one staff member that appellant had raped her and told another staff member that appellant had sex with her in the van. She was emotional and crying. Neither staff member, however, mentioned anything about this or questioned appellant. Appellant left the school that night near the end of his shift.

The next morning, Saturday, November 19, 1983, appellant returned to the school for his assigned shift. Here, again, the testimony conflicts about what transpired that morning. S.R. testified that appellant questioned her about her telling other clients of the sex act and that he had sexual contact with her that morning but not intercourse. Appellant denied the questioning and any such contact.

At trial, the State elicited testimony from C.F., another client at Sioux Vocational School, that appellant had sex with her two days before the first date in question. Through pretrial motions, motions to reconsider, and objections at trial, appellant's counselor persistently fought the introduction of this testimony as bad acts evidence and not within the exceptions of SDCL 19–12–5. The trial court allowed the introduction of this testimony, however, and also denied appellant's attempt to elicit testimony concerning S.R.'s use of birth control pills.

The jury found appellant Willis guilty of first-degree rape in regard to the incidents on November 18 and innocent of the charges stemming from the alleged acts on November 19.

During trial, appellant admitted having sexual intercourse with S.R. on the night of November 18, 1983. Testimony at trial, by two experts, was not in conflict concerning S.R.'s I.Q., the two experts agreeing that S.R. was mentally retarded. A doctor's examination of S.R. on the evening of November 19, 1983, revealed that S.R.'s vagina was lacerated which laceration was consistent with sexual intercourse within the preceding 48 hours.

On June 12, 1984, appellant pleaded guilty to the Habitual Offender Information Part II, and on June 19, 1984, he was sentenced to 25 years in the State Penitentiary. To this judgment and sentence, pursuant to SDCL 23A–32–2, appellant appeals as of right.

## DECISION

### I.

DID THE TRIAL COURT ERR IN ADMITTING TESTIMONY CONCERNING OTHER CRIMES, WRONGS, OR ACTS? WE HOLD THAT IT DID NOT.

Prior to trial, the State filed a motion requesting a ruling on the admissibility of

evidence regarding appellant's similar offense against another female client (C.F.) at Sioux Vocational School. At the hearing on the motion, C.F. testified that on November 15, 1983, appellant entered her apartment at the school because another student was throwing a tantrum. Appellant told C.F. to go sleep on the couch. After calming the situation, appellant awakened C.F. on the couch and, without speaking or threatening her in any way, had sex with her once or twice and then told her she would lose her privileges if she told anyone. C.F. testified that she did not physically or verbally resist appellant's acts.[2]

By a Conditional Order dated April 27, 1984, the trial court ruled that upon proper foundation, the above testimony was admissible under SDCL 19–12–5 "for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" and its probative value was not substantially outweighed by the danger of unfair prejudice under SDCL 19–12–3.[3] The trial court's jury instructions, however, stated that "[t]his evidence was admitted solely for your consideration as to whether it tends to show that the [appellant] intended to commit the offense with which he is charged."[4] It is to be noted that appellant requested this instruction; therefore, it is an invited error. Furthermore, appellant has not raised this particular instruction as an issue herein.

▬▬▬ As stated above, appellant's counsel steadfastly resisted the admissibility and introduction of this testimony (of other crimes, wrongs or acts) and here claims the trial court erred in finding the testimony relevant to one of the factors set out in SDCL 19–12–5.[5]

SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, under this statute, evidence of other crimes or wrongs is inadmissible to show bad character and that the defendant acted in conformity therewith on the date in question. However, such evidence is admissible if it is relevant to one of the stated exceptions, *State v. Rose,* 324 N.W.2d 894, 895 (S.D.1982), and that exception or element is in issue. This Court's standard of review is abuse of discretion. *State v. Pedde,* 334 N.W.2d 41, 43 (S.D.1983).

Appellant argues that the "other acts evidence" was not relevant to any of the above exceptions. He has three rationales. First, intent is not in issue because intent is not an element of rape. *State v. Houghton,* 272 N.W.2d 788, 791 (S.D.1978). Second, identity is not in issue because appellant testified at trial that he had sex with S.R. on the date in question. And third, the common plan or scheme—or modus operandi exception—is not in issue because this is just another method to prove identity and identity is not in issue. *Id.* at 792.

The State argues that the testimony was relevant to show a common plan or scheme to engage in compelled sexual intercourse with retarded women over whom he had control and thus, this negates the consent defense which was a material issue. *State v. Esposito,* 192 Conn. 166, ——, 471 A.2d 949, 953 (1984). *See also, Williams v. State,* 110 So.2d 654, 663 (Fla.1959), *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); *People v. Oliphant,* 399 Mich. 472, 250 N.W.2d 443 (1976).

---

**2.** This is what C.F. testified to at trial, also.

**3.** This was also the trial court's rationale at trial for overruling appellant's motion to exclude the testimony, except the identity factor was noted as inapplicable.

**4.** Jury Instruction XIVA.

**5.** Appellant does not here address the undue prejudice versus probative value question involved in SDCL 19–12–5 rulings.

■ We hold that the trial court did not abuse its discretion in receiving· the evidence concerning the incident with C.F. Such incident was not remote in time and had a direct bearing on the plan, design, and modus operandi of appellant. When the act of sexual intercourse by appellant with S.R. and C.F. are compared, a close parallel can be drawn to establish a common plan, design, or modus operandi. S.R. and C.F. were both mentally retarded adult females; both were under the influence of appellant, as well as his supervision, and lived in the same apartment of the upper eight-plex at the Sioux Vocational School for the Handicapped at Sioux Falls; the two acts of rape occurred within a four-day period; using his authority figure, he isolated the females to prepare and accomplish his plan, namely, to sexually take advantage of them; both females were placed in fear because of appellant's size and his expression of the loss of their privileges; both females were warned or threatened not to tell anyone. Using his official position of dominance and superior intelligence, coupled with his superior size and strength, appellant ravished the physically mature, yet vulnerable, females.

■ This other wrong, and the evidence created by the wrong, buttresses a material issue in this case, that issue being that appellant coerced S.R. into having sexual intercourse. This "other acts evidence" obviously lends credibility to the testimony of the victim, S.R. Appellant defends on the basis of consent. In *Houghton*, defendant openly admitted to the act in the trial for the first charged rape but raised the defense of consent, thus establishing intent as a material issue.[6] In *Houghton*, this Court held that intent was not an element of rape in South Dakota, and therefore, the evidence of other alleged rapes was inadmissible to prove intent. We believe that the holding in *Houghton* has been seriously eroded by subsequent decisions in this Court. *State v. Dace*, 333 N.W.2d 812, 816 (S.D.1983). We determine

that the evidence concerning the offense against C.F. has a direct connection with the crime charged. In *State v. Keeling*, 89 S.D. 436, 440, 233 N.W.2d 586, 589 (1975), we recognized that other crimes, wrongs or acts evidence is inadmissible when the evidence would only tend to show bad character and have no connection with the crime charged. When appellant claims innocence, such as he does here, by a mitigating factor, namely, consent, he thus begets the establishment of intent as a material issue in the crime of rape. Therefore, we hold that an admission of "other acts evidence" to prove intent is not contingent on it being a specific element of the crime charged, but is dependent on the establishment of intent as a material issue. Perforce, and deeming that *Houghton* has been so seriously eroded in the past, we lay to rest its evidentiary holding. We note that SDCL 19–12–5 does not encompass the words "modus operandi"; however, this term of legal art has been infused with the general rubric of "plan" (contained in our statute) which certainly broadens the scope of the "plan exception." *See People v. Goodson*, 80 Cal.App.3d 290, 294–95, 145 Cal.Rptr. 489, 491–92 (1978); *People v. Osborn*, 53 Ill.App.3d 312, 320, 11 Ill.Dec. 57, 64, 368 N.E.2d 608, 615 (1977), *cert. denied*, 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134 (1978); *People v. Clark*, 62 Mich.App. 740, 742, 233 N.W.2d 856, 857 (1975). The plan exception "requires that the former act or acts should indicate, by common features, a plan or design which tends to show that it was carried out by doing the act charged." 2 Wigmore, *Evidence* § 357, at 334 (Chadbourn rev. 1979). The acts perpetrated upon C.F. and S.R. had common features. Evidence reflecting these common features to plan or scheme to engage in compelled sexual intercourse negates appellant's defense of consent to having intercourse with S.R.

■ Finally, the other acts evidence that appellant had sexual intercourse with another mentally retarded female is merely

---

6. When the act is admitted and innocence is claimed on the basis of some mitigating factor, intent becomes a material issue. *See* 2 Wigmore, *Evidence* § 307, at 207 (3rd ed. 1940).

cumulative evidence; for, as detailed in this opinion, appellant has admitted having sexual intercourse with the victim on the night in question and the evidence reflects S.R.'s mental incapacity to give consent. These latter facts support a jury verdict in themselves. S.R. testified that she resisted, was afraid, and tried to fight off the appellant. She sustained a vaginal tear. The latter facts are sufficient independent grounds to likewise support a jury verdict, besides the cumulative "other acts evidence."

## II.

DID THE TRIAL COURT ERRONE-OUSLY INSTRUCT THE JURY AS TO THE DEFINITION OF COERCION AND ITS MEANING IN THIS CASE? WE HOLD THAT IT DID NOT.

■ One of the counts of the indictment alleged that on November 18, 1983, appellant Willis raped S.R. "through the use of coercion and accompanied by apparent power of execution...." The jury found appellant guilty of this count and appellant now argues that the trial court's jury instruction on coercion was in error.

Jury Instruction VI states:

Coercion as used in this case exists where one is, by the unlawful conduct of another, induced to do or perform some act under circumstances which deprive her of the exercise of her free will; it may be either actual, where physical force is put on a woman to compel her to do an act against her will, or implied, where the relation of the parties is such that one is under subjection to the other.

Appellant contends this instruction is in error because 1) it negates the legal requirement of resistance recognized in *State v. Havens*, 264 N.W.2d 918 (S.D.1978), and 2) the latter portion of the instruction fails to instruct that implied coercion requires a causal link between appellant's acts and the victim's acquiescence as is required in actual coercion. Appellant asserts its proposed instruction should have been given. This instruction states: "Coercion means the overbearing of the free will of a per-

son, it implies a wrongful act or conduct sufficient to cause another person to do or refrain from doing something that person has a right to refuse to do."

In *Havens*, 264 N.W.2d at 921, this Court stated when reviewing SDCL 22–22–1:

Although the legislature eliminated the word "compels" ... we feel that the terminology "accomplished * * * through the use of force, coercion or threats * * * *" is sufficient to demonstrate compulsion. Such implied element of compulsion still gives rise to the necessity for resistance more than token unless before or when offered the victim is subjected to fear of violence. (Footnote omitted.)

■ The trial court in Jury Instruction V instructed the jury as to the statutory requirements of rape through the use of coercion. This necessarily included the compulsion element and the requirement of resistance. Jury Instruction VI, which defined coercion, fairly embodied the definition of that term, the law, and the concepts contained in the proposed instruction, and the trial court's refusal to give the latter was not reversible error. *State v. Burtts*, 81 S.D. 150, 132 N.W.2d 209 (1964). Appellant's proposed instruction is too restrictive; it does not set forth actual and implied coercion. From the instruction, "the jury was able to understand the trial court's instruction which fairly embraced the meaning of the word." *State v. Archambeau*, 322 N.W.2d 879, 880 (S.D.1982).

## III.

DID THE TRIAL COURT ERR BY FAILING TO INSTRUCT THE JURY ON THE ALLOCATION OF THE BURDEN OF PROOF ON THE CONSENT DEFENSE? UNDER THE STATE OF THE RECORD, WE HOLD THAT THE TRIAL COURT DID NOT.

Appellant proposed and the trial court accepted the following instruction on consent as a defense.

It is a defense to a charge of rape that the defendant entertained a reasonable

and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the defendant the benefit of that doubt and acquit him of said charge.

The State acknowledged appellant's entitlement to the instruction but later objected because it only applied to the rape by coercion count and not to the rape of a person mentally incapable of giving consent count. The trial court thereafter deleted the last sentence of the instruction and instructed the jury by only giving the first sentence. Appellant's counsel failed to object to this change and the State now asserts that this is not reviewable by this Court. We agree.

Appellant asserts the issue was preserved because the trial court was made aware of its legal position and the instruction requested, and thus appellant was not required to do anything further to protect the record. In the alternative, appellant argues that "this is a classic case for application of the Plain Error Doctrine."

▮▮▮ To accept appellant's contention that the issue was preserved in this case would open a Pandora's Box on the preservation of errors for appeal, for it would require this Court to search the entire record to determine by the cumulation of a statement here and there if counsel has made the trial court aware of its legal position and the action requested. This Court would be caught up in a weighing process, based upon the entire record, if a party litigant agreed or disagreed with an instruction. A party must simply object or except to the instruction offered below. Failing to object to an instruction, makes the instruction the law of the case. In essence, when the trial court modified appellant's requested instruction, appellant owed a duty to object or except to the given instruction, and he is now foreclosed from appellate review. "When an appellant fails to object to instructions offered below, he fails to preserve an error for appeal." *State v. West,* 344 N.W.2d 502, 504 (S.D.1984). *See also, State v. White Mountain,* 332 N.W.2d 726 (S.D.1983); *State v. Ellefson,* 287 N.W.2d 493 (S.D. 1980); SDCL 15–6–51(b).

▮▮▮ We reject the requested application of the plain error doctrine. Appellant is saying that even though he did not object or except to the elimination of the instruction of voluntary consent to engage in sexual intercourse by this retarded woman, we should reverse his conviction. It is to be remembered that he has admitted the act of intercourse and that she is a mentally retarded woman attending a school for the handicapped. Before an instruction concerning the defense of consent may be given, evidence must be offered that would *utterly* negate any element of force, coercion, or threat. *State v. Faehnrich,* 359 N.W.2d 895, 900 (S.D.1984); *State v. Havens,* 264 N.W.2d 918, 922 (S.D.1978). We do not believe, under the state of evidence herein, that this alleged plain error was so prejudicial as to now require reversal. We deem that there is no prejudicial error, for appellant must show that under the evidence the jury might and probably would have returned a different verdict if the entire requested instruction had been given. *State v. Bittner,* 359 N.W.2d 121, 125 (S.D.1984); *State v. Feyereisen,* 343 N.W.2d 384, 387 (S.D.1984). The evidence is overwhelming that appellant, placed in a position of trust and supervision over young retarded women, schemed and took advantage of the victim's mental incapability of giving consent.

### IV.

DID THE TRIAL COURT ERR IN REFUSING TO GIVE APPELLANT'S PROPOSED MISTAKE OF FACT INSTRUCTION? WE DO NOT REACH THIS QUESTION.

In appellant's reply brief, he recognizes that this issue was not preserved for appeal and expressly waives it from further consideration.

## V.

## DID THE TRIAL COURT ERRONEOUS- DID THE TRIAL COURT ERRONE- OUSLY DISALLOW TESTIMONY THAT THE ALLEGED VICTIM WAS ON BIRTH CONTROL PILLS? WE

At trial, S.R.'s mother-guardian testified and during cross-examination appellant's counsel asked her if she had given permission for S.R. to be placed on birth control pills. The State objected because a rape shield hearing had not been conducted and because there was no foundation for it. The trial court sustained the objection and the witness was not permitted to answer. We hold that the testimony was not relevant. Thus, the trial court properly excluded the evidence, albeit for a wrong reason.

SDCL 23A–22–15 provides:

In prosecutions for rape, evidence of specific instances of a victim's prior sexual conduct shall not be admitted nor reference made thereto before the jury or jury panel, except as provided in this section. Whenever a party proposes to offer evidence concerning a victim's prior sexual conduct, the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence.

Appellant claims the trial court's ruling was erroneous because S.R.'s use of birth control pills is not a "specific instance" of her "prior sexual conduct" under the statute. Appellant further argues that the sought-after testimony was relevant to the issue whether S.R. had the capacity to give consent to sexual intercourse.[7] Appellant further claims the trial court was aware that this decision to take birth control pills was S.R.'s individual decision based on the testimony elicited from C.F. at the motion hearing. Appellant grounds this argument on the fact that C.F. testified she individually decided to take birth control pills. It is S.R., not C.F., who is the victim concerned in this rape appeal.

7. Two of the counts in the indictment alleged appellant raped a person incapable of giving

The State counters by asserting that even if the testimony was not within the purview of a rape shield hearing, it was irrelevant, i.e., right decision for the wrong reason. *Cook v. Rezek*, 296 N.W.2d 731, 733 (S.D.1980); *State v. Ripperger*, 284 N.W.2d 877, 879 (S.D.1979); *State v. Marshall*, 264 N.W.2d 911, 916 (S.D.1978).

A trial court's ruling on evidence is not reversible error if any valid reason may exist therefor. *Ripperger*, 284 N.W.2d at 879. Here, the testimony does appear irrelevant. Counsel was asking the victim's mother whether the mother had the victim put on birth control pills. Counsel did not ask the victim. Although such testimony does not appear to come under the rape shield law, the mother's testimony was irrelevant to determine the victim's ability to consent. C.F.'s testimony does not establish that it was the individual's decision; that is to say, S.R.'s decision.

Accordingly, we affirm in all respects.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.

consent to such an act in violation of SDCL 22–22–1(2).