STATE of South Dakota, Plaintiff
and Appellee,

v.

Earlwin J. BLAINE, Defendant
and Appellant.

No. 15679.

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1987.

Decided July 20, 1988.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

James W. Olson, Armour, for defendant and appellant.

SABERS, Justice (on reassignment).

Defendant appeals conviction for driving with .10 percent or more alcohol in his blood. We reverse and remand for new trial based on prosecutorial misconduct.

*Facts*

Earlwin Blaine (Blaine) was stopped on the evening of April 2, 1986, by Police Chief Luke of Avon, South Dakota. Chief Luke had observed a car veer across the center line of old highway 50 in Avon and then weave back onto the grass on the right side of the road. After stopping the car, Chief Luke found Blaine in the driver's seat, several passengers in the car, and a number of beer cans on the floor of the car. One of the cans was tipped over on the floor between Blaine's legs.

Blaine did not have his driver's license and was unable to satisfactorily perform the field sobriety tests as requested. Chief Luke, believing that Blaine was intoxicated, drove him to Tyndall where a blood sample was taken approximately one hour after Blaine's car was stopped. Test results showed .181 percent blood alcohol. A second test of the sample in February of 1987 showed .167 percent blood alcohol.

Blaine was charged with violation of SDCL 32–23–1(1)—driving or being in actual physical control of a vehicle while there is .10 percent or more by weight of alcohol in the driver's blood. Blaine was charged alternatively with violation of SDCL 32–23–1(2)—driving or being in actual physical

control of a vehicle while under the influence of an alcoholic beverage.

A jury convicted Blaine of violation of SDCL 32–23–1(1). Blaine received a thirty-day jail sentence which was suspended upon the condition that he pay a $250 fine and costs.

Blaine appeals and claims the trial court erred by denying his motions: (1) to dismiss the information because it contained two criminal charges in one count in violation of SDCL 23A–8–2(4); (2) to acquit because the State failed to extrapolate the blood test results back to the time of driving; and (3) for a mistrial on the grounds of prosecutorial misconduct. We reverse and remand for retrial on the third issue and do not address issues (1) or (2).

### Prosecutorial Misconduct

During trial, defense counsel wanted to show the jury that defendant's blood-shot eyes were a constant physical condition and that the fact that his eyes were blood-shot at the time of his arrest was inconsequential. The state's attorney commented:

"Are we to understand, ... that this man has been drinking or has not been drinking before he came to court today. So we can make the comparison."

The state's attorney continued to prejudice the jury against the defendant by cross-examining him as follows:

Q. And if you had to make a decision in that car; some little kid runs out in front of you, you'd have had a—

DEFENSE COUNSEL: Objection, prejudicial. Move to strike.

THE COURT: Overruled.

DEFENSE COUNSEL: Move to strike.

THE COURT: Overruled, it's cross-examination.

Q. If some small child—

DEFENSE COUNSEL: *I move for a mistrial* on the prejudicial comment made by the State.

THE COURT: Overruled.

Q. If some young person had run out in front of your car that night—

DEFENSE COUNSEL: Your Honor, this is exceedingly improper. I urge the Court to reconsider the ruling.

THE COURT: Overruled.

Q. If some young person had ran out in front of your car that night, you wouldn't have been able to react as fast as you would have if you had not been drinking, would you?

DEFENSE COUNSEL: Same objection. *I want a continuing objection,* if I may, Your Honor.

THE COURT: Overruled. *You may have it.*

Q. You wouldn't have been able to react as fast, would you Earlwin?

A. Well, like I said, the windshield wipers on the car—it was raining that night. The water was all over, probably wouldn't be able to stop in time. (emphasis added)

The trial court committed prejudicial error by allowing such cross-examination by the state's attorney.

In final argument, the state's attorney continued his attempt to unfairly prejudice the jury against defendant by making the following statements:

STATE'S ATTORNEY: ... But what the State law is saying is you should not be driving your vehicle if your ability to do so is impaired to the point you can't react in time to some—to stop for a small child or swerve back to get out of the way or something, or hit the brakes when you need to hit the brakes or something—

DEFENSE COUNSEL: Objection, that small child again. That's misconduct. He's attempting to equate manslaughter with a DWI, Your Honor.

THE COURT: Well, I think it is overreaching somewhat, ... We don't have any indication of that here.

Despite the court's tardy admonishment, the state's attorney repeated his attempt to prejudice the jury by commenting on matters outside the evidence, as follows:

STATE'S ATTORNEY: ... That's what I'm talking about. We don't need people on the road in South Dakota that can just barely make it home, because they are the guys that go across the road because

they start to get a little sleepy or something like that, and you're coming the other way, and because there's a little child—

DEFENSE COUNSEL: Objection, we're back to manslaughter again. *That's prosecutorial misconduct.*

THE COURT: Overruled. [State's attorney] can talk to the normal consequences of DWI. It's consistently in all the papers all the time and everybody is aware of it.

DEFENSE COUNSEL: He can comment on the evidence, that's not—

THE COURT: Overruled. You're overreacting and its common sense and knowledge possessed by all of us here.

STATE'S ATTORNEY: That's the reason for the statute. We can't have people on the road fading from one shoulder and across the center line and back, not when people are driving from fifty to sixty miles an hour and the cars pass two feet apart. We just can't afford that kind of thing. I don't have to tell you what's in the papers and what's on TV and everything like that, and how many people are in accidents that are alcohol related. You have read the same stuff. And there's no reason for me to try to put that into evidence—

DEFENSE COUNSEL: Same objection, Your Honor—

THE COURT: Overruled. (emphasis added)

Shortly thereafter, the state's attorney continued his argument that the jurors would be the next fatality of a drunk driver, as follows:

STATE'S ATTORNEY: ... In other words, that's the idea. He doesn't have to be so falling down drunk that he can't manipulate it. The fact that he can stay on his lane here for nineteen miles out of twenty doesn't make him innocent, because on the twentieth mile when he decides to cross the line, *you might be the one that's driving the other car.*

DEFENSE COUNSEL: Objection, Your Honor.

THE COURT: *Overruled.* (emphasis added)

In *State v. Vickroy*, 205 N.W.2d 748, 749 (Iowa 1973), a single sentence of the prosecutor's argument resulted in a reversal: "How many of you people coming around that corner heading west on 92 from Patterson that night or had the members of your family, any of them, in the car coming that direction—." The Supreme Court of Iowa held that that sentence required reversal and remanded for a new DWI trial.

■ The prosecutor has an overriding obligation, which is shared with the court, to see that the defendant receives a fair trial. *State v. Brandenburg*, 344 N.W.2d 702 (S.D.1984). The burden of ensuring that the defendant receives a fair trial weighs as heavily upon the prosecutor as it does on defense counsel, the court, and the jury. *State v. Havens*, 264 N.W.2d 918 (S.D.1978).

■ The prosecutor must refrain from injecting unfounded or prejudicial innuendo into the proceedings, *People v. George*, 130 Mich.App. 174, 342 N.W.2d 908 (1983), and not appeal to the prejudices of the jury, *People v. Hudgins*, 125 Mich.App. 140, 336 N.W.2d 241 (1983).

■ Arguments that invite the jurors to put themselves in the shoes of a victim are generally improper. *State v. Johnson*, 324 N.W.2d 199 (Minn.1982). Irrelevant questioning which had the effect of inflaming prejudices or exciting the passions of the jury against the accused is improper. *State v. Turnbull*, 267 Minn. 428, 127 N.W. 2d 157 (1964).

■ The duty and obligation of the prosecutor is perhaps best set forth in *Viereck v. United States*, 318 U.S. 236, 248, 63 S.Ct. 561, 566–67, 87 L.Ed. 734, 741 (1943), *quoting Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall

win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

As argued by defense counsel in this case:

The prosecutor ... clearly asked the jurors to place themselves and small children in a position of peril at the hands of drunken drivers—not once but several times. He inferred that unless [defendant] was convicted either they or a small child would suffer death or serious injury. He did not merely strike hard blows. He struck foul blows.

This is gross prosecutorial misconduct that was acquiesced in by the Court. Such improper comments by the prosecutor inflamed the jury and denied [defendant] his right to a fair trial. This Court must reverse the Judgment of Conviction in the lower court and remand this case for retrial.

Defense counsel also argued: "Every trial lawyer knows when an attempt is being made to prejudice and inflame the jury by improper questioning, and this is it."

We believe a sufficient record was preserved on this issue. Defense counsel correctly points out that it is "pointless to request an admonition of a trial judge who has just overruled an objection." Even so, objections (and even a continuing objection) were made during the cross-examination and argument, and motions for mistrial were made. The record was maintained. *State v. Novaock*, 414 N.W.2d 299, 302 (S.D.1987). The misconduct was sufficiently flagrant to constitute reversible error and require a new trial.

HENDERSON, J., concurs.

MORGAN, J., specially concurs.

WUEST, C.J., and MILLER, J., dissent.

MORGAN, Justice (concurring specially).

I agree with the majority decision to reverse the conviction on the grounds of prosecutorial misconduct that deprived Blaine of a fair trial. However, I would remand for entry of a judgment of acquittal because State failed to introduce extrapolation testimony to relate the blood test back to the time of the offense charged, thus failing to produce vital evidence of the offense charged under SDCL 32–23–1(1) and for which Blaine was convicted. The failure to produce this evidence does not give State another bite at the apple. *State v. Aspen*, 412 N.W.2d 881, 884 (S.D.1987); *see also Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

The offense for which Blaine was convicted was driving or being in actual physical control of any vehicle *while there is 0.10 percent or more by weight of alcohol in his blood*. The offense relates to the time he was driving, not to some indeterminate later time when the blood test was given. It is a fact that the alcoholic content of the blood varies in relation to the time of ingestion of the alcohol into the stomach, requiring first some time to pass into the blood, and then, ultimately absorption into all parts of the body. That which is taken up by the brain and central nervous system causes the symptoms known as intoxication. The time for this absorption process will vary depending on a number of factors which we need not discuss here. However, it is important to note that the absorption process is demonstrated by a blood alcohol curve (BAC) which rises to a peak before diminishing as the body works off the alcohol. The trial court, in admitting the evidence in this case, made reference to the testimony of the state chemist to the effect that the average person loses alcohol at a rate of .015 percent per hour. That information is of no value unless it has first been established that the blood test was taken on the down side of the BAC when the absorption had peaked and the body was, indeed, in the process of

losing or working off the effects of the alcohol. Otherwise, from the time of consumption to the time of peaking, the BAC is gradually rising so that it is possible that if a blood test had been taken at the time of the arrest, the result could have been totally exculpatory. *See* The Single Chemical Test for Intoxication: A Challenge to Admissibility. 66 Mass.L.Rev. 23 (1981). I totally disagree with the failure of the opinion to deal with this issue. It will simply be repeated upon a retrial and we will have to address it again in the event of another conviction.

Likewise, the first issue should be addressed. In my opinion, the offenses charged under SDCL 32–23–1(1) and (2) are separate offenses. The "per se" offense under (1) is distinguishable from the general offense under (2) in several respects: The statutes do not provide for any rebuttable presumption, making driving with 0.10 percent BAC an offense without any reference to the effect that alcohol may have on the accused. The question is not whether the driver is intoxicated, but whether he has a specific percent BAC or greater in his blood. Proof of actual impairment is unnecessary. The BAC level meeting or exceeding the statutory standard is per se illegal. Blood–Alcohol Tests: *Neville* and its Progeny, 20 Crim.L.Bull. 493 (1984). Presumably, this issue will also arise upon a retrial and we will likely have to address it later.

MILLER, Justice (dissenting).

The majority fails to point out that under the settled law of this state:

[N]o hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts. *State v. Webb,* [251 N.W.2d 687 (S.D.1977)]. Furthermore, we will not disturb the trial court's ruling on a motion for a new trial based on misconduct of counsel unless we are convinced that there has been a *clear abuse of discretion. State v. Havens,* 264 N.W.2d 918 (S.D.1978); *State v. Burtts,* 81 S.D. 150, 132 N.W.2d 209

(1964); *State v. Norman,* 72 S.D. 168, 31 N.W.2d 258 (1948). (Emphasis added.)

*State v. Kidd,* 286 N.W.2d 120, 121–22 (S.D.1979).

The majority further fails to recognize that in this case, as in *State v. Dace,* 333 N.W.2d 812 (S.D.1983),

the trial judge was on the scene, had heard the arguments and had the opportunity to know whether [the improper remarks] had any apparent effect on the jury. He apparently didn't feel that they had and *we accede to his judgment lacking any showing on the part of the defense of actual bias or prejudice.* (Emphasis added.)

*State v. Havens,* 264 N.W.2d 918, 923 (S.D. 1978).

From reading the record as a whole, rather than the isolated portions quoted by the majority, it appears that the state's attorney was principally attempting to challenge and erode Blaine's strong denial that he was driving while under the influence of alcohol and that his driving and reaction abilities were not impaired. Certainly nothing is improper in the prosecutor's motives, although a literal reading of the majority could lead one to believe the contrary.

Further, I respectfully suggest that the majority opinion insults the basic intelligence of the jurors. What citizen has not been exposed to daily reminders in the media (be they through public service announcements by MADD, SADD and others or by news accounts or poignant stories) of the serious dangers to the public caused by the drinking driver? All the state's attorney did here was to remind the jurors of the obvious, rather than to inflame them.

Most importantly, the trial court perceived no misconduct, and, in fact, at one time characterized the objections as "overreaction" by defense counsel. Even assuming that the state's attorney's conduct was improper, defendant has failed to show any actual prejudice or bias and that there was a clear abuse of discretion by the trial court. *Kidd, supra; Dace, supra; Havens, supra.* I submit that it is improper for the majority to ignore or depart from

the settled law of this state and to decide this case by reciting language from other courts which has marginal application to the facts here.

For the foregoing reasons I assert that the trial court should be affirmed.

I am authorized to state that Chief Justice WUEST joins in this dissent.