STATE of Minnesota, Respondent,

v.

Lawrence A. JONES, Appellant.

No. C9–85–1294.

Court of Appeals of Minnesota.

Feb. 4, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, Minnesota Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant Lawrence Jones was convicted by a jury of criminal sexual conduct in the first degree under Minn.Stat. § 609.342(c) (1984). Appellant contends the evidence was insufficient to support his conviction. He also argues that the trial court committed reversible error in an evidentiary ruling. Finally, he asserts the trial court abused its discretion in denying his motion for a dispositional sentencing departure. We affirm.

## FACTS

Appellant, age 34, and B.A., age 30, had known each other since childhood. The two began dating in November 1984 and were sexually intimate at that time.

On New Year's Day, 1985, B.A. told appellant that their relationship was over. She testified that she ended the relationship because appellant did not take responsibility for his actions and because he drank excessively. B.A. testified that when appellant was drinking, he became argumentative and "would act crazy." Appellant agreed that their problems

stemmed from his abuse of alcohol. Appellant did not want the relationship to end and tried to convince B.A. to reconsider, but she refused. On two different days during the week following January 1st, appellant went to B.A.'s house and tried to convince B.A. to take him back; both times she refused.

On January 10 at about 11:00 p.m., appellant again went to B.A.'s house. Appellant brought a sawed off .22-caliber rifle with him. B.A. allowed him to enter the house. Appellant had been drinking.

Appellant told B.A. he was leaving for Chicago that night, and he again tried to convince her to renew their relationship. Again B.A. refused him and told him it was over between them. Appellant told B.A. he had $800 with him. B.A. responded by telling him that if he wanted her, he would just have to pay for it. B.A. testified that she meant this as a smart remark—a way to get appellant to leave her alone. She testified that he instead became angry and hit her on the temple with the butt of the gun.

B.A. testified that appellant then held the gun to her head, marched her into the bedroom, and told her he would not pay her, but instead would rape her. She testified that he then told her he loved her, and that she, to keep him calm, also told him that she loved him. She also acquiesced to his demand that she have sex with him, and when he told her she was not acting right, she pretended enjoyment.

B.A. testified that she cooperated with appellant because she was terrified of what he might do with the gun. B.A.'s sister had been shot in the face and killed by an acquaintance after she refused his advances. B.A. testified that she had previously told appellant about this tragedy. Appellant's counsel was not permitted to cross-examine B.A. about any other facts surrounding her sister's death.

Appellant gave a different view of the events of January 10. He agreed that he became angry when B.A. made the remark about having to pay, but stated that he only swung the gun around and accidentally hit her in the head. He stated that after the gun hit B.A., she ran into the bedroom and he followed her there to comfort her. He testified that things led from there to consensual sexual intercourse. He denied making the statement that he would rape her. He said her acts and words all indicated to him that B.A. was acting voluntarily.

Afterwards, the two talked for a long time. Appellant offered to get some medicine for the wound on B.A.'s forehead. Appellant eventually fell asleep, and B.A. then went downstairs and called a friend, who called the police. When the police arrived, they went into B.A.'s bedroom, awakened appellant, arrested him, and took him into custody. Upon his arrest, appellant responded to questions regarding his name, his birthdate, and his knowledge of the gun. Later, and again at trial, appellant discounted his initial answers to these questions.

The jury convicted appellant of criminal sexual conduct in the first degree under Minn.Stat. § 609.342(c). Conviction under section 609.342(c) requires the existence of a reasonable fear of imminent great bodily harm on the part of the victim. Because of appellant's long-term relationship with the victim, the judge sentenced appellant to 33 months, a downward departure from the presumptive sentence of 43 months under the Minnesota Sentencing Guidelines. The court refused any dispositional departure from the guidelines.

## ISSUES

1. Was the evidence sufficient to prove appellant guilty beyond a reasonable doubt?

2. Did the trial court commit reversible error by denying appellant's counsel the right to question the victim about the circumstances surrounding her sister's death?

3. Did the trial court abuse its discretion in denying appellant's motion for a dispositional sentencing departure?

## ANALYSIS

1. In reviewing a claim of insufficiency of the evidence, this court must take the view of the evidence most favorable to the State and must assume that the jury believed the State's witnesses and disbelieved any contradictory evidence. If the jury, could reasonably have found the defendant guilty, having due regard to the presumption of innocence and to the State's burden of proving the defendant's guilt beyond a reasonable doubt, the verdict will not be reversed. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

■ The evidence here is sufficient to sustain appellant's conviction. In a prosecution for rape, the victim's testimony need not be corroborated, nor must the prosecution show that the victim resisted her assailant. *See* Minn.Stat. § 609.347, subd. 1, 2 (1984). Both B.A. and appellant testified that B.A. ended their relationship because of appellant's alcohol abuse. They both testified that appellant had tried to convince B.A. to take him back on two previous occasions that week but that B.A. had steadfastly refused. It is reasonable to conclude that B.A. would not change her mind when appellant once again appeared at her house after he had been drinking.

■ Further, B.A.'s testimony that appellant's brandishing and use of the gun heightened her fear because of her memory of the shooting death of her sister explains B.A.'s cooperation with appellant. The loaded gun and appellant's awareness of the circumstances of B.A.'s sister's death also support a conclusion that circumstances existed at the time of the act that caused B.A. to have a reasonable fear of imminent great bodily harm. *See* Minn.Stat. § 609.-342(c). Moreover, appellant had already inflicted some bodily harm on B.A. by hitting her with the gun. The jury could reasonably conclude from the evidence that appellant was guilty, and its verdict will not be disturbed.

2. B.A. testified on direct examination that she was afraid of appellant's use of the gun because her sister's ex-boyfriend shot and killed her when she refused sexual contact. Appellant's attorney then moved to strike B.A.'s testimony as irrelevant, inflammatory, and prejudicial. In the alternative, the attorney requested permission to voir dire B.A. to establish a foundation for cross-examination and to make an offer of proof. The attorney wanted to establish that the woman's killer was not her boyfriend but her pimp. The trial judge denied both motions. Appellant now claims the judge's refusal constituted reversible error as a denial of appellant's constitutional right to confront the witnesses against him.

■ The confrontation clause of the United States Constitution envisions a cross-examination of the witness in which the accused has the opportunity to test the recollection, the conscience, and the credibility of the witness. *See Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980). Beyond that, the extent to which extraneous matters are permitted into a criminal case for the purpose of showing the probability or improbability of the existence of some fact in dispute, or to affect the credibility of the testimony of a witness as to such fact, rests largely in the discretion of the trial court. *State v. Brown*, 185 Minn. 446, 448, 241 N.W. 591, 592 (1932). The scope of cross-examination is also largely left to the discretion of the trial judge. *State v. Dille*, 258 N.W.2d 565, 569 (Minn.1977).

■ Appellant's cross-examination of B.A. fully tested both B.A.'s recollection of the events of January 10 and her credibility. The judge's limits on questioning regarding the victim's sister's relationship with her killer did not impinge upon appellant's constitutional right to confront the witnesses against him, but were discretionary limits imposed to exclude inflammatory and prejudicial testimony. *See* Minn.R. Evid. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).

3. Citing appellant's long-standing acquaintance with B.A., the court ordered a

downward departure of ten months from the presumptive sentence of 43 months. However, the court refused to grant appellant's dispositional departure request. Appellant asserts that this refusal constitutes an abuse of the trial court's discretion.

■ Under substantial and compelling circumstances, a trial court may depart from the sentencing guidelines. The Minnesota Supreme Court has stated that

[a] trial court sentencing a defendant for criminal sexual conduct may depart dispositionally from the presumptive sentence and place the defendant on probation only if the defendant is particularly amenable to probation or if offense-related mitigating circumstances are present.

*State v. Love*, 350 N.W.2d 359, 361 (Minn. 1984). Reversal for refusal to depart from the sentencing guidelines is normally unwarranted. *State v. Olson*, 359 N.W.2d 53, 54 (Minn.Ct.App.1984) (upholding trial court's refusal to depart dispositionally from the sentencing guidelines). Because the trial court is in the best position to determine the question, it has broad discretion in deciding whether departure is warranted. *State v. Sherwood*, 341 N.W.2d 574, 577 (Minn.Ct.App.1983).

■ In the present case, the trial court followed the recommendation of the presentencing investigation. That report recommended incarceration and indicated the victim's continuing fear of appellant. The court also had an evaluation from the Minnesota Institute of Black Chemical Abuse that stated that appellant was appropriate for treatment. The trial judge discussed appellant's motion at length with the attorneys before making his ruling. The facts here do not present the unusual case that warrants a reversal of the trial court's decision.

### DECISION

The evidence sustains appellant's conviction of criminal sexual conduct in the first degree. The trial court's evidentiary ruling and his refusal to depart from the sentencing guidelines were within his discretion.

Affirmed.