**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jason JONES, Defendant and Appellant.**

**The PEOPLE of the State of South Dakota in the INTERESTS of J.J., Minor Child, and Concerning D.C.**

Nos. 18161, 18172.

Supreme Court of South Dakota.

Argued March 21, 1994.

Decided Sept. 14, 1994.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Bruce V. Anderson, Wagner, for defendant and appellant.

AMUNDSON, Justice.

Jason Jones appeals his transfer from juvenile court to adult court and the subse-

quent judgment entered pursuant to a jury verdict convicting him of second-degree rape. We affirm.

## FACTS

On July 11, 12 and 13 of 1991, several juvenile girls rented a motel room in Lake Andes, South Dakota, for a party. These girls were between the ages of twelve and sixteen. Alcohol was being consumed by occupants and visitors of the motel room. The record does not indicate that these girls had any parental supervision.

During the afternoon of July 13, 1991, the girls met L.B., who was with her cousin, Jason Jones (Jones). The young girls invited L.B. and Jones to the motel room for a party. L.B. and Jones went to the motel room and started drinking the alcohol Jones' stepmother purchased for them.

As evening progressed, Jones and four girls, M.L. (the victim), I.G., L.B., and E.H. remained in the motel room. L.B. and I.G. left Jones, M.L., and E.H. in the motel room and walked to the local bar to look for I.G.'s boyfriend. After I.G. and L.B. left the motel room, M.L. shut off the TV and the room became dark. M.L. testified that she remained in the room because she "wanted to go to sleep." Jones stayed behind because he was about to "pass out."

M.L. testified that she was sleeping until the defendant woke her up by unbuttoning her pants.[1] Jones then began kissing her and she asked him to stop. Meanwhile, E.H. was trying to sleep on the floor. E.H. testified that M.L. did not object as the contact started but she heard M.L. say "no" to Jones one time while the two were kissing in the adjacent bed. As this progressed, E.H. left the room to get I.G. and L.B. at the bar. Upon reaching the bar, she told L.B. and I.G. that Jones was trying to "bone" M.L. The

three girls then ran back to the motel to help M.L.

Jones inserted his penis into M.L.'s vagina. M.L. claims she pleaded with Jones to stop because "it hurt." She also claims Jones put his hand over her mouth in an attempt to stop her from screaming. I.G. and L.B. testified that they could hear M.L. screaming as they approached the motel room. After entering the room, L.B. pushed Jones off of M.L. and noticed blood "all over the bed and [M.L.'s] legs."

I.G. then phoned the police. After arriving at the motel, Lake Andes Police Officer Mervin Durham asked M.L. if she had been raped. M.L. answered "no." Officer Durham transferred the children to the Charles Mix County Law Enforcement Center (Center) to contact their parents.

While waiting at the Center, M.L. noticed she was bleeding from the vagina. When M.L.'s mother arrived she examined M.L. and decided to take her to the hospital in Wagner, South Dakota. The doctor who examined M.L. discovered a laceration in the wall of the vagina approximately 2.5 centimeters in length. The doctor testified at trial that the injury was indicative of a use of force and could have been caused by a penis in a very forceful act.

Jones was detained pursuant to a court order on July 15, 1991. State filed a motion for transfer to adult court on August 30, 1991. On March 26, 1992, the juvenile court ordered the matter transferred to adult court. While the matter was pending in juvenile court, social history, psychological, psychiatric, chemical dependency and sexual evaluations were prepared.

After the transfer to adult court, State presented Jones' case to a Charles Mix County Grand Jury which issued an indictment on May 22, 1992. On June 8, 1992, Jones filed a motion to dismiss based on a violation of SDCL 23A–44–5.1[2] and for a

---

1. Jones claims the intercourse was consensual and that M.L. initiated the contact.

2. SDCL 23A–44–5.1 provides:
   (1) Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days, and such time shall be computed as provided in this section.

(2) Such one hundred eighty day period shall commence to run from the date the defendant has first appeared before a judicial officer on an indictment, information or complaint. As to indictments, informations, complaints or orders for a new trial pending on July 1, 1991, such one hundred eighty day period shall commence to run from July 1, 1991.

violation of his Sixth Amendment right to a speedy trial. The trial court denied this motion. A jury trial was held on August 10 and 11, 1992.[3] The jury found Jones guilty of second-degree rape. Jones appeals.

## ISSUES

1. Did the trial court err in denying Jones' motion to dismiss due to State's failure to prosecute the matter in a timely fashion?

2. Did the trial court err by allowing State to use statements made by Jones to professional counselors during the transfer proceedings for impeachment at his trial in adult court?

3. Did the trial court err in failing to give Jones' proposed jury instructions?

4. Did the trial court err in denying Jones' motion for a judgment of acquittal?

5. Did the trial court err in transferring Jones to adult court pursuant to SDCL 26–11–4?

(3) If such defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack, such period shall commence to run from the date of the mistrial, filing of the order granting a new trial, or the filing of the mandate on remand.

(4) The following periods shall be excluded in computing the time for trial:

(a) The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on competency and the period during which he is incompetent to stand trial; the time from filing until final disposition of pretrial motions of the defendant, including motions brought under § 23A–8–3; motions for a change of venue; and the time consumed in the trial of other charges against the defendant;

(b) The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel provided it is approved by the court and a written order filed. A defendant without counsel shall not be deemed to have consented to a continuance unless he has been advised by the court of his right to a speedy trial and the effect of his consent;

(c) The period of delay resulting from a continuance granted by the court at the request of the prosecuting attorney if the continuance is

## DISCUSSION

### Issue 1

Did the trial court err in denying Jones' motion to dismiss due to State's failure to prosecute the matter in a timely fashion?

The Sixth Amendment of the United States Constitution and Article VI, § 7, of the South Dakota Constitution, provide a criminal defendant with the right to a speedy public trial. First, Jones claims he has been denied his constitutional right to a speedy trial because he was not given a trial within the one hundred eighty day limitation set out in SDCL 23A–44–5.1. This statute requires all criminal cases be disposed within one hundred eighty days of the defendant's first appearance before a judicial officer. Jones argues that the speedy trial provisions of SDCL 23A–44–5.1 should apply to juvenile proceedings because South Dakota's Juvenile Court procedures do not provide a similar time requirement for commencing the formal adjudicatory proceeding. We disagree.

■ It is well recognized that a juvenile court proceeding is not a prosecution for crime but a special proceeding which serves

granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date and provided a written order is filed;

(d) The period of delay resulting from the absence or unavailability of the defendant;

(e) A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance. In all other cases the defendant shall be granted a severance so that he may be tried within the time limits applicable to him; and

(f) Other periods of delay not specifically enumerated herein, but only if the court finds that they are for good cause. A motion for good cause need not be made within the one hundred eighty day period.

(5) If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the defendant shall be entitled to a dismissal with prejudice of the offense charged and any other offense required by law to be joined with the offense charged.

3. Jones' appellate counsel did not represent him at trial.

as an alternative to a criminal prosecution. *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). A juvenile will not be held criminally liable for an offense until the juvenile has been transferred to the adult court having jurisdiction over the offense. SDCL 26–11–1. Therefore, a minor is not subject to the requirements of the rules of criminal procedure until transferred. On June 8, 1992, Jones filed a motion to dismiss based upon a violation of SDCL 23A–44–5.1, and a violation of his Sixth Amendment right to a speedy trial. This motion was filed almost a year after Jones had been detained as a juvenile and approximately seventy-one days from his transfer to adult court.

"The constitutional and statutory rights given to persons charged with crimes ordinarily are not applicable to juvenile court proceedings." 43 C.J.S. *Infants* § 51 (1978). "Juvenile proceedings and sentences ... are conducted solely in the best interests of the child." SDCL 26–7–11; *State v. Lohnes,* 324 N.W.2d 409, 414 (S.D.1982).

■ South Dakota statutory law dictates that juvenile adjudicatory hearings are to be governed by the rules of civil procedure under SDCL ch. 15–6. SDCL 26–7A–34 and –56. The rigid requirements of the rules of criminal procedure do not lend themselves to thoroughly pursuing the purpose of juvenile court proceedings. The purpose of juvenile court proceedings is not to punish but rather to rehabilitate and correct a juvenile's behavior so as to avoid future confrontations with the law. In order to accomplish this goal, the juvenile court must weigh many different factors before deciding whether to transfer a matter for trial in adult court or dispose of the case in juvenile court. *State v. Harris,* 494 N.W.2d 619 (S.D.1993); *In re L.V.A.,* 248 N.W.2d 864 (S.D.1977); SDCL 26–11–4. Oftentimes, as in this case, evaluations must be prepared after a petition is filed in order to determine whether the minor should be transferred to adult court. These evaluations obviously take time and can cause delay.

There is a split of authority as to whether the rules of criminal procedure should be applied to ensure a speedy trial in juvenile proceedings. The majority of jurisdictions which have ruled on this issue have refused to apply their rules of criminal procedure to juvenile proceedings. *See R.D.S.M. v. Intake Officer,* 565 P.2d 855 (Ak.1977); *State v. Myers,* 116 Ariz. 453, 569 P.2d 1351 (Ariz. 1977); *In Interest of C.T.F.,* 316 N.W.2d 865 (Ia.1982); *Robinson v. State,* 707 S.W.2d 47 (Tex.Cr.App.1986).

■ Naturally, Jones relies on the minority position by citing *P.V. v. District Court, Etc.,* 199 Colo. 357, 609 P.2d 110 (Colo.1980). In that case, the Colorado Supreme Court held that trial courts were bound by the statutory and constitutional speedy trial requirements in juvenile as well as adult proceedings. *Id.* 609 P.2d at 111. We find the majority position much more persuasive and hold that the 180 day rule does not apply to juvenile proceedings. "We have long recognized that a juvenile court proceeding is not a prosecution for crime, but a special proceeding that serves as an ameliorative alternative to a criminal prosecution." *C.T.F.* 316 N.W.2d at 866–67 (citations omitted). "Delinquency proceedings are civil in nature and the provisions of the [ ] Code of Criminal Procedure do not apply." *Robinson,* 707 S.W.2d at 49.

■ The one hundred eighty day rule is statutory, but the right to a speedy trial is constitutional. Juvenile's are still entitled to constitutional protections.

Traditionally, juvenile delinquency proceedings were held to be special proceedings that were not subject to the provisions of either the state or federal constitutions; thus, juveniles did not enjoy the protection of constitutional rights applicable in criminal prosecutions of adults. In 1967, however, the United States Supreme Court decided the landmark case of *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The court held that when delinquency proceedings may result in the detention of the child the due process clause of the 14th Amendment requires states to observe certain fundamental rights. The *Gault* court found the following constitutional guarantees applicable in such proceedings: 'The right to written notice of the specific charge in advance of the hear-

ing; notification of the right to counsel, and to appointed counsel in case of indigency; the privilege against self-incrimination; and the right to a hearing based on sworn testimony, with the corresponding right of cross-examination.'

*C.T.F.,* 316 N.W.2d at 867–68 (1982) (citations omitted).

The *Gault* court did not state that all constitutional rights of an adult criminal prosecution are available in a juvenile delinquency proceeding. Instead, the Court prescribed a case-by-case determination of the applicability of constitutional rights available in juvenile proceedings predicated on fair treatment, tempered by the nature of the juvenile hearing. *Id.* The *Gault* court stated: "The problem is to ascertain the precise impact of the due process requirement upon such proceedings." 387 U.S. at 13–14, 87 S.Ct. at 1436, 18 L.Ed.2d at 538.

This case-by-case due process analysis was applied by the United States Supreme Court in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), when it held that the due process clause extends a constitutional right to the beyond-a-reasonable-doubt standard of proof in the adjudicatory hearing. It was also applied in *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), when the Court held that a juvenile does not have a constitutional right to a jury trial in a delinquency proceeding.

Conspicuously absent from the United States Supreme Court decision in *Gault* is the constitutional right to a speedy trial in a delinquency proceeding. The Supreme Court has yet to address this issue. Nevertheless, this court concludes that the due process clause of the 14th Amendment to the United States Constitution and Article VI, § 7, of the South Dakota Constitution, provide juveniles with the right to a speedy trial.[4]

■ We must then determine whether the constitutional right to a speedy trial has been violated in this case. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101

(1972), the United States Supreme Court created a four-factor test for determining whether an accused has been denied the right to a speedy trial under the Sixth Amendment. The following factors must be considered: (1) The length of the delay; (2) the reason for the delay; (3) whether the accused asserted the right; and (4) whether the accused was prejudiced by the delay. *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17. None of these four factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

■ First, Jones argues that his right to a speedy trial was triggered on July 13, 1991, when he was arrested as a juvenile. The delay between the arrest and his trial as an adult was nearly fourteen months. Such delay is presumptively prejudicial and sufficient to warrant constitutional analysis. *Id.* "While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett v. United States,* ─── U.S. ───, ───, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520, 531 (1992) (citation omitted).

■ The second factor requires us to determine the reason for this delay. The first eight months of this delay was caused by the juvenile court's transfer proceedings. While subject to the juvenile court's jurisdiction, social history, psychological, psychiatric, chemical dependency and sexual evaluations were prepared for the transfer hearing. All of these evaluations were ordered by the court, one of which was requested by Jones. Approximately one hundred fifty-three days elapsed from the time the court ordered the first evaluation until all evaluations were filed with the court. The evaluations were conducted to aid the court in determining whether the juvenile court should waive jurisdiction and transfer Jones to adult court. This court outlined numerous factors which must be considered by a juvenile court in a trans-

───────

4. Despite our holding that SDCL 23A–44–5.1 does not apply to juvenile proceedings, we do consider it a valuable guide in determining

whether there has been an impermissible delay. *R.D.S.M. v. Intake Officer,* 565 P.2d 855, 858 (Ak.1977).

fer hearing. *L.V.A.*, 248 N.W.2d at 867. Many of these factors have been codified at SDCL 26–11–4 *to protect the juvenile's rights.* Naturally, this information takes some time to accumulate. Jones concedes he is responsible for more than two months of this eight-month delay because he requested a continuance to prepare for the transfer hearing.

In addition to these evaluations, other delays included the State's request for an amended psychological evaluation, the time taken by the juvenile court in waiving jurisdiction and in securing an indictment as an adult, as well as the period from indictment to his trial as an adult, which included Jones' motion to dismiss and motion for change of judge. The motion for change of judge came almost twenty days after the motion to dismiss and 90 days after the order of transfer. By the time a new judge was appointed, as requested by Jones, and ruled on Jones' motion to dismiss, more than forty days had transpired.

[D]ifferent weights should be assigned to different reasons [for delay]. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (footnote omitted).

While Jones is not responsible for all of these delays, he must accept some of the responsibility. Jones obviously contested his transfer to adult court. A review of this record indicates a considerable amount of time was spent preparing for and scheduling the hotly-contested transfer hearing. Additionally, Jones has not shown that any of these delays were deliberate.

As for the third factor, Jones filed a motion to dismiss for denial of his right to a speedy trial. This clearly shows an assertion by Jones to preserve this issue for appeal.

The fourth factor is prejudice to the defendant. The United States Supreme Court wrote that prejudice should be assessed in light of the interests the right to a speedy trial was designed to protect. The Court identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Jones was the only witness called to testify on his behalf. At trial there were instances where prosecution witnesses testified that they were unable to recall certain events. Jones claims the prosecution witness' lapse of memory caused him prejudice. We disagree. "Prejudice occurs only when 'defense witnesses are unable to recall accurately events of the distant past.' " *United States v. Tranakos*, 911 F.2d 1422 (10th Cir.1990) (quoting *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118). "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so." *Barker*, 407 U.S. at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111. Failure of the prosecution witness' memory does not support a claim that the Sixth Amendment was violated. *See Tranakos*, 911 F.2d 1422; *United States v. Tercero* 640 F.2d 190 (9th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *United States v. Mulligan*, 520 F.2d 1327 (6th Cir.1975), *cert. denied*, 424 U.S. 919, 96 S.Ct. 1123, 47 L.Ed.2d 325 (1976); *United States v. Shepherd*, 511 F.2d 119 (5th Cir.), *reh'g denied*, 514 F.2d 1072 (5th Cir. 1975); *United States ex rel. Walker v. Henderson*, 492 F.2d 1311 (2d Cir.1974), *cert. denied*, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974); *United States v. Heinlein*, 490 F.2d 725, (D.C.Cir.1973); *State v. Morris*, 230 Mont. 311, 749 P.2d 1379 (1988); *State v. Ossana*, 739 P.2d 628 (Utah 1987).

Jones claims he contemplated suicide while incarcerated at the Springfield Juvenile Detention Facility. This is most unfortunate

but has not been proven to have occurred because of an inordinately long period of incarceration. While the delay before his trial in adult court was quite substantial, it was justified. "Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. . . . We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Doggett* — U.S. at —, 112 S.Ct. at 2693, 120 L.Ed.2d at 531 (citations omitted).

After applying the *Barker v. Wingo* factors, we conclude Jones has not proven that he was denied his right to a speedy trial under either the Sixth Amendment of the United States Constitution or Article VI, § 7, of the South Dakota Constitution. *State v. Stock,* 361 N.W.2d 280 (S.D.1985); *Barker,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

■ Alternatively, Jones argues that he has been denied his right to equal protection under the law because the one hundred eighty day rule of SDCL 23A–44–5.1 did not apply to the juvenile proceedings. No authority is cited for this proposition. Therefore, this issue is waived. *Strickland v. Strickland,* 470 N.W.2d 832 (S.D.1991).

### ISSUE 2

Did the trial court err by allowing State to use statements made by Jones to professional counselors during the transfer proceedings for impeachment at his trial in adult court?

During the transfer proceedings, Jones was evaluated by many psychologists and counselors. In these evaluations, Jones stated that he had used marijuana on a daily basis in the past and had experimented with cocaine, crank, crack, mushrooms, acid, and other street drugs. He also related that he has blackout experiences when he drinks alcohol. These evaluations revealed Jones had spent a considerable amount of time on the

streets in California. Jones filed a motion in limine to prohibit the State from using any material contained in the evaluations for adult court proceedings pursuant to SDCL 26–7A–106.[5] The trial court denied this motion and stated that it would allow the State to use this information for impeachment purposes if Jones took the stand. Jones now contends he was improperly prejudiced because the State impeached Jones with statements he made to the professional counselors during the transfer proceedings.

During State's cross-examination, Jones was asked about his prior drug use and the frequency of his blackouts. State also asked Jones: "Would it be a fair statement that in California you lived on the streets?" Jones answered, "No, it wouldn't." At no time during this questioning did State refer to the evaluations of Jones. State never used the evaluations to call Jones' veracity into question by exposing prior inconsistent statements. State simply asked questions about items which were included in the evaluations.

■ Nevertheless, the record indicates Jones did not object to questioning on grounds that the cross-examination violated SDCL 26–7A–106. "This court has repeatedly held that reversible error cannot be predicated upon the denial of a motion in limine and that failure to specifically object to the evidence during trial forecloses complaint on the issue on appeal." *State v. Gallipo,* 460 N.W.2d 739, 743 (S.D.1990) (citing *State v. Novaock,* 414 N.W.2d 299 (S.D.1987); *State v. Olson,* 408 N.W.2d 748 (S.D.1987)). Prior to claiming error on appeal, the trial court should have the opportunity to rule on the matter. *State v. Handy,* 450 N.W.2d 434 (S.D.1990). Thus, since the trial court was never asked to rule on the applicability of SDCL 26–7A–106 during the cross-examination, this issue is not properly before this court and has been waived.

### ISSUE 3

Did the trial court err in failing to give Jones' proposed jury instructions?

---

5. SDCL 26–7A–106 provides:
   No adjudication, disposition or evidence given in any proceedings under this chapter or chapter 26–8A, 26–8B or 26–8C is admissible against a child in any criminal, civil or other proceeding,

except in subsequent proceedings under this chapter and related chapter 26–8C regarding the delinquency of the same child and in subsequent criminal proceedings concerning the same child for sentencing purposes.

■ The trial court refused to give the following instruction requested by Jones:

You are instructed that *in order for you to find Jason Jones to be guilty of rape in the second degree you must find beyond a reasonable doubt that [M.L.] offered more than token resistance,* unless either before or when resistance was offered, [M.L.] was subjected to fear of violence. If you do not find, beyond a reasonable doubt, that either [M.L.] offered resistance or [M.L.] was subjected to such fear of violence, than (sic) you must find Jason Jones not guilty.

Jones based this instruction on this court's opinion in *State v. Havens,* 264 N.W.2d 918 (S.D.1978).

In *Havens,* this court explained that the South Dakota Legislature's repeal and reenactment of "SDCL 22–22–1 was intended to modernize the rape statute to place the act in a proper perspective and to try the actor for the crime, not the victim." [6] *Id.* at 921. This court stated:

Although the legislature eliminated the word 'compels' as found in the Model Penal Code, we feel that the terminology 'accomplished ...' is sufficient to demonstrate compulsion. *Such implied element of compulsion still gives rise to the necessity for resistance more than token unless before or when offered the victim is subjected to fear of violence.*

*Id.* at 921 (emphasis added).

Later, in the *Havens* opinion, the court stated:

The appellant's first proposed instruction that *'lack of consent must be established by resistance' is simply no longer correct law.*

6. SDCL 22–22–1 provides:
   Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

   . . . . .

   (2) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
   (3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or
   (4) If the victim is incapable of giving consent because of any intoxicating, narcotic or anesthetic agent or hypnosis; or

That is not to say that consent cannot be a defense where there is evidence offered and received that the victim did indeed consent, but that would also have to utterly negate any element of force, coercion or threat.

*Id.* at 922 (emphasis added).

In 1985 this court revisited the resistance issue, stating:

The trial court in Jury Instruction V instructed the jury as to the statutory requirements of rape through the use of coercion. *This necessarily included the compulsion element and the requirement of resistance.*

*State v. Willis,* 370 N.W.2d 193, 199 (S.D. 1985) (emphasis added).

The next case in which this court discussed a victim's resistance and consent was *State v. Blalack,* 434 N.W.2d 55 (S.D.1988). In that opinion, former Chief Justice Wuest wrote: "We note that a *lack of consent in a rape case need not be established by physical resistance.*" *Id.* at 60 (citing *State v. Jones,* 381 N.W.2d 44, 47 (Minn.App.1986); *Havens,* 264 N.W.2d at 922).[7]

In this case, the trial court refused to give Jones' proposed instruction requiring "more than token resistance" based on its opinion that *Havens* was no longer the law in South Dakota in light of these more recent decisions. Instead the trial court instructed:

The allegation in Count I of the use of force, or coercion or threats of immediate and great bodily harm against the victim requires the state to prove beyond a reasonable doubt that the alleged victim did

. . . A violation of subdivision (2), (3) or (4) of this section is rape in the second degree, which is a Class 2 felony.

7. This statement made in *State v. Blalack,* 434 N.W.2d 55 (S.D.1988), was used again in *State v. Gallipo,* 460 N.W.2d 739 (S.D.1990):

"Moreover, lack of consent by a victim in a rape case is not established solely by showing physical resistance by the victim. *Blalack, supra.* The element of compulsion can be satisfied by showing that the victim submitted out of fear of violence or injury. *Id.*"
*Gallipo* at 743.

not freely and voluntarily consent to the act of sexual penetration. *Lack of consent need not be established by the alleged victim's physical resistance. Lack of consent can be established by showing the alleged victim submitted out of fear of violence or injury to herself.* (Emphasis added.) [8]

The jury was also instructed that if Jones had a reasonable and good faith belief that M.L. consented to engage in an act of sexual penetration he must be acquitted. *Willis,* 370 N.W.2d 193.

■■■ "Jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient." *State v. Johnston,* 478 N.W.2d 281, 283 (S.D.1991). Instructions are based on statutory and decisional law. A victim's resistance is not listed as an element in the rape statute itself. SDCL 22–22–1(2). "Absent a legislative intent to the contrary, the statute's language must be considered conclusive." *State v. Schuster,* 502 N.W.2d 565, 568 (S.D.1993) (citing *State v. Galati,* 365 N.W.2d 575, 577 (S.D.1985) (citing *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980))). "Courts may not interpret or construe a statute in a manner inconsistent with the plain language employed by the legislature." *Galati,* 365 N.W.2d at 577.

"The statute is clear on its face." *Schuster,* 502 N.W.2d at 568. A person is guilty of rape where the actor accomplishes sexual penetration "through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by the apparent power of execution." SDCL 22–22–1(2). This section of the rape statute makes no mention of, and thus does not require, resistance by the victim. Additionally, this court has clearly removed the resistance requirement in recent decisions. *See Blalack,* 434 N.W.2d 55; *Gallipo,* 460 N.W.2d 739. After reviewing the law and the instructions in this case, we conclude the trial

court correctly instructed the jury on the elements of the crime charged.

■■■ Next, Jones complains the trial court should have instructed the jury that "[t]he word 'force' [as used in the instructions] does not refer to injuries sustained once sexual penetration has occurred." It was not error for the trial court to refuse this instruction because force was reasonably explained in the court's other instructions. It is well settled that a trial court may refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction. *State v. Woodfork,* 454 N.W.2d 332 (S.D.1990). Additionally, Jones has failed to cite any supporting authority, therefore this issue is waived. *State v. Rough Surface,* 440 N.W.2d 746 (S.D.1989).

■■■ Jones also claims the trial court committed prejudicial error when it refused to give the following instruction:

> An act of sexual intercourse does not constitute rape, where the female initially consents to the act, but after penetration, withdraws her consent, and the male, without interruption of penetration, continues the act against the will of the female and by means of force.

This proposed instruction is premised on authority from another jurisdiction. *People v. Vela,* 172 Cal.App.3d 237, 218 Cal.Rptr. 161 (Cal.App.1985). This court has never held that initial consent forecloses a rape prosecution and, based on the facts of this case, we choose not to adopt the position of the *Vela* case. Therefore, the trial court did not err by refusing this instruction.

ISSUE 4

Did the trial court err in denying Jones' motion for a judgment of acquittal?

■■■ The standard of review for denial of a motion for judgment of acquittal is whether the State set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. *Blalack,* 434 N.W.2d at 59. When reviewing

---

8. Jones also argues that the combination of this instruction and another instruction injected the victim's mental capacity as an issue which should have been set out in separate instructions.

We will not consider this issue on appeal because no objection was made at trial. *State v. Willis,* 370 N.W.2d 193, 200 (S.D.1985).

sufficiency of the evidence, this court considers the evidence in a light most favorable to the verdict. *Id.* "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *Id.* at 60.

■ Applying these principles to the facts of this case, we conclude that the trial court correctly denied Jones' motion for judgment of acquittal. Jones admits he engaged in sexual intercourse with M.L. He argues that she consented to these acts. We note that submission is not equivalent to consent. *McNair v. State*, 108 Nev. 53, 825 P.2d 571 (1992). Rape can be shown when the victim submitted out of fear of violence or injury. SDCL 22–22–1; *Blalack*, 434 N.W.2d at 60.

■ M.L. testified that she told Jones to stop and at one point screamed. She testified Jones put his hand over her mouth to muffle her screams. M.L. also claimed she bit Jones' tongue when he put it in her mouth.

E.H., who was present when Jones and M.L. first made contact, heard M.L. say "no" to Jones. After hearing this, E.H. decided to run for help. The other girls testified they heard M.L. scream as they returned to the motel room. The physician who examined M.L. found a 2.5 centimeter laceration in the wall of her vagina immediately after the rape. The physician also testified the laceration was indicative of force.

This testimony, if believed by the jury, and the other evidence introduced at trial were sufficient to sustain the jury's guilty verdict. We conclude the trial court properly denied Jones' motion for a judgment of acquittal.

## ISSUE 5

Did the trial court err in transferring Jones to adult court pursuant to SDCL 26–11–4?

It is well established that "[a] transfer hearing is a 'critically important' action determining vitally important statutory rights of the juvenile." *In Interest of A.D.R.*, 499 N.W.2d 906, 907 (S.D.1993) (citations omitted). Jones claims the trial court abused its discretion by transferring his case to adult court. "An abuse of discretion 'refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence.'" *State v. Flying Horse*, 455 N.W.2d 605, 607–08 (S.D.1990) (citation omitted).

Jones claims the trial court erred because State did not show probable cause. This argument totally lacks merit. SDCL 26–11–4(4) specifically states: "The state shall not be required to establish probable cause to show prosecutive merit." Nevertheless, the juvenile court concluded "there is probable cause to believe that Jason Jones committed the offense."

■ SDCL 26–11–4 provides factors for a court to consider in determining whether to transfer juvenile proceedings to adult court.[9]

9. In pertinent part, SDCL 26–11–4 provides:

The circuit court may, in its discretion, in any case of a delinquent child, after transfer hearing, permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes, petty offenses or violation of municipal ordinances. In such cases the petition filed under chapter 26–8 shall be dismissed. The hearing shall be conducted as hereinafter provided.

At the transfer hearing, the court shall consider only whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child.

The following factors may be considered by the court in determining whether a child should be transferred:

(1) The seriousness of the alleged offense to the community and whether protection of the community requires waiver;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(3) Whether the alleged offense was against persons or property with greater weight being given to offenses against persons;

(4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit;

(5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults;

(6) The record and previous history of the juvenile;

(7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

The juvenile court is required to consider "whether it would be contrary to the best interest of the child or of the public to retain jurisdiction over the child." SDCL 26–11–4. "[T]here must be substantial evidence in the record to support the juvenile court's finding that it would be contrary to the best interests of the child *OR* of the public to retain jurisdiction over the child." *Harris,* 494 N.W.2d at 624 (emphasis in original) (citations omitted). Neither the best interests of the child nor the best interests of the State are controlling considerations. *Id.*

In this case, the trial court correctly considered the best interests of both Jones and the State in ordering transfer. The court also considered the other factors outlined in SDCL 26–11–4. "It is not necessary that evidence be presented on all of these factors at each transfer hearing, or that the trial court must make express findings on each factor." *Harris,* 494 N.W.2d at 624. "The court's findings of fact upon which its order is based 'shall not be set aside upon review unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.'" *Id.* (quoting SDCL 26–11–4).

■ Jones contends the juvenile court's finding that "Jones committed the offense in an aggressive, violent and willful manner" was clearly erroneous. After reviewing the evidence presented at the transfer hearings, we do not find the juvenile court's finding clearly erroneous. Jones continued to have sexual intercourse with M.L. despite her request to stop. Jones put his hand over her mouth in an attempt to quiet her screams. Witnesses heard M.L. screaming for Jones to "get off" of her, yet Jones continued the intercourse until L.B. pushed him off M.L.

■ The trial court found Jones had an extensive criminal record which included "numerous drug motivated burglaries, thefts, and several runaways from group homes in California." The trial court also found "Jones has not completed or fully participated in rehabilitative programs during his placements in California because he has resisted same and run away. He does not appear amenable to the rehabilitation services available within the South Dakota juvenile system." Jones attempted to walk away from one South Dakota facility. After considering Jones' past antisocial history, prior contacts with law enforcement, difficulties with the California juvenile authorities, runaways from juvenile facilities, serious psychological and sexual problems, and his severe drug and alcohol dependency, the trial court correctly concluded that Jones must be transferred and dealt with as an adult.

In conclusion, there is ample evidence in the record to support the court's findings and reasons for transfer. The trial court did not abuse its discretion in ordering Jones' transfer to adult court. *Harris,* 494 N.W.2d at 627.

Affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

·HENDERSON, Retired Justice, concurs in result.

KONENKAMP, J., not having been a member of the Court at the time this case was submitted to the Court, did not participate.

HENDERSON, Retired Justice (concurring in result).

SDCL 23A–44–5.1 requires, "Every person indicted, informed or complained against for any offense shall be brought to trial within one hundred eighty days [.]" Said period commences to run from the date the defendant first appeared before a judicial officer on the matter. In Jason Jones' case, the starting date was July 13, 1991; however, his

---

Written reports and other materials relating to the child's mental, physical, and social history may be considered by the court. . . .
· If the court finds that a child should be held for criminal proceedings or proceeded against for a petty offense or violation of municipal ordinance in a court of competent jurisdiction, the court shall enter an order certifying to that effect. The order shall contain findings of fact upon which the court's decision is based. The findings shall not be set aside upon review unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . .

trial did not begin until August 10, 1992, well over 180 days after his initial appearance.

Certain periods of time are excluded from the SDCL 23A–44–5.1 180–day window. Juvenile proceedings, however, do not appear on this list. In my opinion, Jones' juvenile proceeding was a function of the criminal prosecution and is subject to the 180–day right to a speedy trial guaranteed by both the Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution. Thus, I cannot join the majority opinion on its respective rationale.

Rather, my justification for the delayed trial arises from *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), cited by the majority opinion. Various tests, evaluations, and the debate to try Jones as an adult, along with two months of delays requested by Jones, were necessary to insure Jones' rights. He was not prejudiced by these delays. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. As *Barker* supports the delay, there is no need to create another exception to the 180–day rule.

During trial, State blatantly violated a pre-trial ruling that information from Jones' psychological evaluations would only be admissible for impeaching Jones. State asked several questions based upon information taken from these evaluations. Although it is possible that some of the information could have been found through admissible sources, State failed to make that diligent effort. State's argument, that the issue of past drug use was raised when Jones testified he did not black out on the night in question, is weak at best.

Although I find it repugnant that State improperly utilized information from confidential psychological evaluations already deemed inadmissible by the trial court, I am not convinced beyond a reasonable doubt that the jury would have returned a verdict of guilty absent this error. *State v. Larson,* 512 N.W.2d 732 (S.D.1994); *State v. Younger,* 453 N.W.2d 834 (S.D.1990). Bluntly, the sizeable tear in the complainant's vagina suggests forcible entry and had to greatly influence the jury. Witnesses heard her screaming. One witness testified there was blood all over the bed and complainant's legs. A physician testified that when he examined her later that morning, she was bleeding profusely from the vaginal area. All of this evidence established a forcible rape.