Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
The People of the State of South Dakota,
IN THE INTEREST OF Y.C.,
Minor Child, and concerning L.S. and V.C.
[1998 SD 76]
South Dakota Supreme Court
Appeal from the First Judicial Circuit, Lincoln County, SD
Hon. Richard Bogue, Judge
#20203--Reversed
Scott A. Abdallah, Lincoln County State's Attorney, Canton, SD
Attorneys for Appellant State of South Dakota.
Deborah A. Birgen, May, Johnson, Doyle & Becker, Sioux Falls, SD
Attorneys for Appellee Y.C.
Argued Jun 3, 1998; Opinion Filed Jul 8, 1998
GILBERTSON, Justice.
[Â¶1] The State of South Dakota appeals the circuit court's denial of a motion to transfer sixteen-year-old Y.C. to adult court in connection with charges stemming from a July 21, 1997 armed robbery of a bank. We reverse.
FACTS AND PROCEDURE 
[Â¶2] On July 28, 1997, a juvenile petition was filed in Lincoln County, South Dakota charging Y.C., then age fifteen, with first degree robbery and commission of a felony while armed with a firearm. Y.C.'s mother had found a bag of cash in his room and immediately summoned the police. Y.C. is alleged to have used a loaded .357 magnum pistol to obtain cash from a bank teller at the First American Bank in Worthing, South Dakota.
[Â¶3] The State subsequently moved to transfer the case to adult court. The circuit court held hearings on the motion on August 29, 1997, and September 15, 1997. Dr. Vail Williams (Dr. Williams) conducted a court-approved evaluation of Y.C. and testified on September 15, 1997.
[Â¶4] At the close of the hearing, the court announced it would take the transfer motion under advisement and issued an "Order for Commitment to the Human Services Center" for "examination and treatment in the appropriate program until the child successfully completes the program." We granted the State's request for an intermediate appeal and on November 3, 1997, we reversed and remanded the circuit court's order after holding it erred in committing Y.C. to a treatment program before deciding the pending transfer motion. See People ex rel Y.C., 1997 SD 126, 570 NW2d 36.
[Â¶5] On remand on November 19, 1997, the circuit court denied the State's transfer motion. The circuit court apparently relied exclusively upon the testimony of Dr. Williams in concluding that Y.C. could be rehabilitated in the juvenile system. The circuit court noted it would have preferred to send Y.C. to the Human Services Center for a rehabilitation evaluation but believed this Court's previous decision precluded such a course of action.(fn1)  The State again appeals.
[Â¶6] Whether the circuit court abused its discretion in denying the State's motion to transfer Y.C. to adult court.
STANDARD OF REVIEW 
[Â¶7] When the state files a motion for transfer, it should be denied where the juvenile court finds that it would be contrary to the best interests of the child and the public to retain jurisdiction over the child. The motion should be granted where the juvenile court finds that it is "contrary to the best interests of the child OR the public to retain jurisdiction over the child." State v. Jensen, 1998 SD 52, Â¶20, __ NW2d __ (citing State v. Harris, 494 NW2d 619, 624 (SD 1993) (citations omitted) (emphasis in original)). This finding must be supported by substantial evidence in the record. Id. The State claims the circuit court abused its discretion by not transferring Y.C.'s case to adult court. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by and clearly against, reason and evidence." State v. Jones, 521 NW2d 662, 673 (SD 1994) (citation omitted) (internal quotations omitted).
ANALYSIS AND DECISION 
[Â¶8] "The purpose of juvenile court proceedings is not to punish but rather to rehabilitate and correct a juvenile's behavior so as to avoid future confrontations with the law." Jones, 521 NW2d at 667. It is also to adequately protect the public. SDCL 26-11-4 concerns criminal proceedings against a juvenile charged with a felony and lists seven factors to guide courts in transfer cases by providing in part:

At the transfer hearing, the court shall consider only whether it is contrary to the best interest of the child and of the public to retain jurisdiction over the child.

The following factors may be considered by the court in determining whether a child should be transferred:


(1) The seriousness of the alleged felony offense to the community and whether protection of the community requires waiver;
(2) Whether the alleged felony offense was committed in an aggressive, violent, premeditated, or willful manner;
(3) Whether the alleged felony offense was against persons or property with greater weight being given to offenses against persons;
(4) The prospective merit of the complaint. The state is not required to establish probable cause to show prospective merit;
(5) The desirability of trial and disposition of the entire felony offense in one proceeding if the child's associates in the alleged felony offense are adults;
(6) The record and previous history of the juvenile;
(7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if the juvenile is found to have committed the alleged felony offense, by the use of procedures, services, and facilities currently available to the juvenile court.
...
[Â¶9] We reiterated in Harris, that the seven factors listed above were not intended

to reduce the discretion of the trial judge in transfer hearings, nor was it the intention to create a rigid or cumbersome procedure to be followed by the trial courts in all cases. It is not necessary that evidence be presented on all of these factors at each transfer hearing, or that the trial court must make express findings on each factor.
494 NW2d at 624 (citation omitted).
[Â¶10] Y.C. emigrated to the United States from the Ukraine at the age of seven. Shortly thereafter his parents were divorced. Y.C. enjoyed a close relationship with his mother, father, and siblings but admitted to having some difficulties with his step-father. Y.C.'s extensive and troubled history began just three years prior to the bank robbery, as Y.C. admitted four thefts and two assaults. These offenses as well as their dispositions are explained below in an examination of the various factors.
[Â¶11] The State argues that the circuit court abused its discretion in not transferring the case to adult court. We examine the record to determine if substantial evidence exists to support the trial court's findings.
[Â¶12] 1. Seriousness of the Alleged Crime and Protection of the Community
[Â¶13] This Court has stated that "[although] the seriousness of the offense alone does not warrant transfer, when considered with the other criteria, it may become the deciding factor in making a transfer." State v. Culton, 273 NW2d 200, 202 (SD 1979) (quoting In re L.V.A., 248 NW2d 864, 869 ( SD 1976)). Y.C. has been charged with two serious crimes. Both first degree robbery and commission of a felony while armed with a firearm are class two felonies. See SDCL 22-30-1, 22-30-6, 22-30-7, 22-14-12. The commission of a felony while armed with a firearm has been considered such a serious offense that a conviction for a first offense carries a mandatory minimum sentence of five years in the state penitentiary with this sentence to run consecutive to any other sentence imposed for a violation of the principal felony. SDCL 22-14-12. If Y.C. were tried and convicted as an adult he could be sentenced up to 50 years and a fine of fifty thousand dollars for the two offenses. See 22-6-1; 22-14-12.
[Â¶14] 2. Whether the Alleged Offense was Committed in an Aggressive, Violent, Premeditated, or Willful Manner
[Â¶15] Y.C. was interviewed at the Sioux Falls Police Department five days after the robbery. Prior to the start of this video-taped interview, Y.C. smiled and laughed when he overheard officers talking about the Federal Bureau of Investigation and the South Dakota Division of Criminal Investigation becoming involved in his case. Y.C. then admitted planning the robbery and taking several preparatory steps including stealing his step-father's unloaded .357 magnum revolver from his lock box and his mother's vehicle to commit the bank robbery. Additionally, he purchased clothing to be worn during the crime and loaded the revolver before leaving for Worthing. Y.C. admitted choosing the bank in Worthing because Worthing is a small town that "doesn't have crap" and they only have one police officer so the chances of getting caught would be reduced.(fn2)  When the interviewer asked Y.C. if nervousness was the reason he could not remember exactly what he had said to the teller during the robbery, Y.C. replied, "I knew what I was doing perfectly but I don't remember what I said. I was just yelling stuff." (emphasis added). During the robbery, Y.C. repeatedly pointed the pistol at the bank teller and threatened to kill her if she did not comply with his demands. Y.C. complained that the teller was acting scared and "telling lies about her grandmother being sick." During the interview, Y.C. indicated he was angry with the teller because he now believed "she didn't give [him] all the money."